

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-135-CV

IN THE INTEREST OF

A.B.H. AND L.N.H., MINOR CHILDREN

------------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

After considering our prior opinion on appellant Cheryll H.'s motion for rehearing, we grant the motion, withdraw our opinion and judgment dated September 20, 2007, and substitute the following.

In six issues, Cheryll contends that the trial court abused its discretion by sua sponte appointing Scott H. sole managing conservator of the children, by finding that a material and substantial change in circumstances had occurred warranting the appointment of Scott as sole managing conservator and by finding that it was in the best interest of the children to do so, and by entering

findings of fact and conclusions of law in support of its order.  We reverse and remand for a new trial.

The trial court entered a final decree in Cheryll and Scott's divorce on September 24, 2003.  In the decree, the trial court appointed Scott and Cheryll joint managing conservators of their children, A.B.H. and L.N.H.  At the time of the divorce, A.B.H., a boy, was six years old, and L.N.H., a girl, was three years old.  The trial court granted Cheryll the exclusive right to establish the primary residence of the children within Tarrant County; the right, after consultation with Scott, to consent to medical, dental, and surgical treatment involving nonemergency invasive procedures and to psychiatric and psychological treatment of the children; the exclusive right to receive and give receipt for periodic payment for the support of the children and to hold or disburse these funds for the benefit of the children; and the right to make decisions regarding the children's education.

The decree also gave Scott extended standard possession visitation.  It also ordered him to pay child support by wage withholding to Cheryll in the amount of six hundred dollars per month and to provide health insurance for the children.  The decree contained specific orders that a change in the then-current day care providers, Scott's parents Mark and Dortha H., would constitute a material change in circumstances.

2

On June 18, 2004, Cheryll filed a petition to modify the parent-child relationship, in particular, the day care provisions for the children and for increased child support. She alleged that Scott's parents were unable to provide childcare for "a number of occasions each month" when she needed childcare. Therefore, Cheryll alleged that a change in providers would be in the children's best interest.

On July 1, 2004, Scott filed a counterpetition to modify the parent-child relationship. He specifically requested that he be appointed the joint managing conservator with the right to determine the primary residence of the children, or, in the alternative, that he be awarded the independent right to consent to medical, dental, and surgical treatment of the children and the independent right to make decisions concerning the children's education. He also alleged generally that a material and substantial change in circumstances had occurred since the divorce.

On October 13, 2004, the trial court signed temporary orders from a hearing conducted on August 2, 2004. In the temporary orders, the trial court entered a temporary injunction prohibiting the parties from making disparaging remarks about each other in front of the children. It also ordered the day care provider, then Scott's parents, to designate no more than two weeks per year for vacation to be exercised in not less than one week increments. The trial

3

court further appointed Denise Marx, a licensed social worker, to conduct a social study concerning the circumstances and condition of the children and the home of any person requesting managing conservatorship or possession of the children.

Marx's study was dated October 1, 2004. In preparing the study, Marx visited both Scott's and Cheryll's homes, and she interviewed both Scott and Cheryll, as well as A.B.H., L.N.H., Scott's mother, Cheryll's boyfriend, and Scott's sister. She did not visit Scott's parents' home, nor did she interview Scott's then-girlfriend and current wife.

As a result of the study, Marx concluded, "At this point, I do not believe Scott and Cheryll . . . can act together as Joint Managing Conservators to make decisions for the children." She recommended that the trial court name Cheryll sole managing conservator of the children and that Cheryll be permitted to make day care arrangements of her own choice.

Scott amended his counterpetition on May 3, 2005, asking that if the court denied his request to be named the parent with the right to determine the primary residence of the children, the court order visitation in excess of the Texas expanded standard visitation schedule in order to accommodate Cheryll's

4

intent to move the children from west Fort Worth to North Richland Hills.[1] Scott also requested that if the court did not appoint him as the person with the right to determine the primary residence of the children, that the court restrict the geographical location of the children to White Settlement ISD where the children had been attending school.

The court heard Cheryll's petition and Scott's counterpetition in May and June 2005. At the time of trial, A.B.H. and L.N.H. were seven and five, respectively.

At trial, Marx testified about the conclusions she made following her interaction with the family. Specifically, she concluded that Scott had anger and control issues stemming from the divorce, that Cheryll was merely trying to avoid conflict with Scott, and that Cheryll had not attempted to alienate Scott from the children. Marx testified without objection as to her conclusion that the parties could not work together as joint managing conservators and her recommendation that Cheryll be named sole managing conservator. The social study was offered and admitted without objection, and both sides elicited testimony about Marx's recommendations without objection by either counsel.

---

[1] Cheryll and her then-boyfriend and current husband bought a home in North Richland Hills in January 2005.

5

Dr. Stroud, the children's dentist, testified as an expert for Scott. He told the court that L.N.H. had had to have her front four teeth pulled out due to decay. Dr. Stroud did not testify as to whose fault the tooth decay was, but he did indicate that in the past he had spoken to Cheryll about not giving L.N.H. a "sippy" cup with sweetened milk to go to bed with. Dr. Rogers, the children's pediatrician, testified that he had diagnosed A.B.H. as morbidly obese; however, he did not attribute the problem to either parent.[2]

In addition to hearing testimony from Marx and the doctors, the trial court heard testimony from Cheryll, Scott, Cheryll's new husband, Scott's new wife, Scott's mother, and L.N.H.'s former teacher. At the close of trial, the court delayed ruling on the conservatorship issues but did order Scott and Cheryll to attend "High Conflict Families" counseling and education.

On August 4, 2005, the trial court issued a letter ruling appointing Scott sole managing conservator of the children and Cheryll possessory conservator of the children. Cheryll was given extended possession and ordered to pay child support. The letter reiterated that both parties were ordered to attend and complete the high conflict families counseling and education course. On

---

[2] A.B.H. was overweight at the time of the divorce decree, but Dr. Rogers did not diagnose him as morbidly obese until after the divorce.

6

January 18, 2006, the trial court entered an order in accordance with the letter ruling.

In her first issue, Cheryll contends that the trial court abused its discretion by appointing Scott sole managing conservator when he did not plead for this relief or request it at trial. Scott responds that the matter was tried by consent. We disagree.

The Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply to a suit for modification.[3] Rule 301 of the Texas Rules of Civil Procedure provides that the judgment of the court must be supported by the pleadings.[4] But when an issue not raised by the pleadings is tried by the express or implied consent of the parties, it is treated in all respects as if it had been raised in the pleadings.[5]

However, trial by consent is a doctrine that is only intended to cover the exceptional case in which it clearly appears from the record as a whole that the

---

[3] *See* Tex. Fam. Code Ann. § 156.004 (Vernon 2002).

[4] Tex. R. Civ. P. 301.

[5] Tex. R. Civ. P. 67; *see Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Baltzer v. Medina*, 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Halla v. Halla*, No. 14-06-01126-CV, 2007 WL 2367600, at *2 (Tex. App.—Houston [14th Dist.] Aug. 21, 2007, no pet.) (mem. op., not designated for publication)).

parties tried the unplead issue.[6]  It is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation.[7]

To determine whether an issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue.[8]  Consent may be found only where evidence regarding a party's unpleaded issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint.[9]

In *Baltzer v. Medina*, the Fourteenth District Court of Appeals addressed the issue of trial by consent in a case similar to the one before us.[10]  In that

---

[6] *RE/MAX of Tex., Inc. v. Katar Corp*., 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997), *pet. denied*, 989 S.W.2d 363 (Tex. 1999) (Hecht, J., dissenting to denial of petition for review on other grounds); *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

[7] *RE/MAX of Tex*., 961 S.W.2d at 328; *Stephanz*, 846 S.W.2d at 901.

[8] *RE/MAX of Tex*., 961 S.W.2d at 328; *Stephanz*, 846 S.W.2d at 901; *see also Beck v. Walker*, 154 S.W.3d 895, 901 n.3 (Tex. App.—Dallas 2005, no pet.).

[9] *See* Tex. R. Civ. P. 67; *Johnson v. Structured Asset Servs., LLC,* 148 S.W.3d 711, 719 (Tex. App.–Dallas 2004, no pet.).

[10] 240 S.W.3d 469 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

case, the appellant appealed the trial court's order modifying the joint managing conservatorship and designating the appellee as sole managing conservator.[11] The appellant argued that because the appellee did not request to be appointed sole conservator, the trial court abused its discretion by granting the relief.[12]

The court of appeals noted that the appellee testified that he wanted certain exclusive rights but that he did not request the right to be sole managing conservator.[13] The court of appeals held that because the appellee did not request that the trial court appoint him sole managing conservator and in fact expressly requested that the conservatorship be shared, the trial court abused its discretion by designating the appellee as sole managing conservator.[14]

Here, both parties elicited testimony from Marx as to her conclusion that joint managing conservatorship was unworkable and her recommendation that Cheryll be named sole managing conservator. Scott argues that the issue was tried by consent because both parties were aware that Marx had recommended sole managing conservatorship in her social study. However, the social study states that Cheryll, not Scott, should be appointed sole managing conservator.

---

[11] *Id.* at 476.

[12] *Id.*

[13] *Id.*

[14] *Id.*

As such, we hold that Cheryll was not made aware that Scott was seeking sole managing conservatorship from Marx's recommendation.

In his petition, Scott specifically requested that he be appointed

> joint managing conservator with the right to determine the primary residence of the children, or in the alternative, the independent right to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the children and the independent right to make decisions concerning the children's education.

Scott did not request to be named sole managing conservator, and the record is devoid of evidence indicating that both parties understood that this issue was before the trial court.[15] Accordingly, we hold that the trial court abused its discretion by designating Scott as A.B.H.'s and L.N.H.'s sole managing conservator because the issue was not tried by consent. Therefore, we sustain Cheryll's first issue.

Because we hold that the trial court abused its discretion by designating Scott as sole managing conservator, we reverse the trial court's order designating Scott as sole managing conservator and remand this case to the trial court for a new modification trial.[16]

---

[15] *See id.*; *Johnson,* 148 S.W.3d at 719.

[16] In light of our holding, we need not address Cheryll's remaining issues. *See* Tex. R. App. P. 47.1; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

10

JOHN CAYCE  
CHIEF JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

LIVINGSTON, J., filed a dissenting opinion.

DELIVERED:  September 25, 2008



# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-135-CV

IN THE INTEREST OF

A.B.H. AND L.N.H., MINOR CHILDREN

------------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING OPINION ON REHEARING

------------

I respectfully dissent.  Because both Cheryll and Scott filed pleadings putting modification of the terms of the joint managing conservatorship at issue, specifically implicating the best interest of the children, and because the issue was tried by consent, I would affirm the trial court's judgment.

The Supreme Court of Texas has held that

a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child.  The courts are given wide discretion in such proceedings.  Technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children. . . .  [O]nce the child is brought under its jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to

> make proper disposition of all matters comprehended thereby in a manner supported by the evidence.

*Leithold v. Plass,* 413 S.W.2d 698, 701 (Tex. 1967); *Lohmann v. Lohmann,* 62 S.W.3d 875, 879 (Tex. App.—El Paso 2001, no pet.); *see In re A.J.J.,* No. 02-04-00265-CV, 2005 WL 914493, at *5 & n.30 (Tex. App.—Fort Worth Apr. 21, 2005, no pet.) (mem. op.). The best interest of the child is paramount and should prevail over an overly technical application of the rules of pleading and practice. *See* TEX. FAM. CODE ANN. § 153.002 (Vernon 2002); *Leithold,* 413 S.W.2d at 702; *Lohmann,* 62 S.W.3d at 878–79.

Section 156.004 of the family code, which makes the rules of civil procedure applicable to modification suits, should not affect this liberal application of the pleading rules, and the two can be harmonized. TEX. FAM. CODE ANN. § 156.004 (Vernon 2002). *But see Baltzer v. Medina*, 240 S.W.3d 469, 476 n.5 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that section 156.004 superseded the holding in *Leithold*). Under the reasoning of *Leithold* and *Lohmann*, a pleading requesting modification of the terms of an existing conservatorship should be construed to give the trial court the discretion to change those terms in the best interest of the child, even if the specific modification made by the trial court was not delineated in the pleadings. In other words, a judgment modifying conservatorship would be supported by pleadings specifically putting the terms of conservatorship at

2

issue. *See* TEX. R. CIV. P. 301; *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) (holding that in the absence of special exceptions, courts should construe pleadings liberally).

Because Cheryll and Scott both put the workability of the existing conservatorship arrangement at issue in their pleadings, I would hold that those pleadings were sufficient to support the trial court's order designating Scott as the sole managing conservator of the children. *See Leithold,* 413 S.W.2d at 701; *Lohmann,* 62 S.W.3d at 878–79; *A.J.J.*, 2005 WL 914493, at *5 & n.30.

Moreover, I would hold that the issue was tried by consent. Although no witness specifically testified that *Scott* should be named sole managing conservator of the children, the matter of whether a change from the then-current joint managing conservatorship arrangement was warranted was clearly tried by the parties, and the parties introduced conflicting evidence regarding which parent was better able to make health care, residency, and other decisions regarding A.B.H. and L.N.H. Accordingly, I would conclude and hold that the issue was tried by consent. *See* TEX. R. CIV. P. 67; *Beck v. Walker*, 154 S.W.3d 895, 901 n.3 (Tex. App.—Dallas 2005, no pet.).

3

For these reasons, I respectfully dissent.

TERRIE LIVINGSTON
JUSTICE

DELIVERED: September 25, 2008