COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00136-CV

 

 


 
 
 Paul
 Kramer and PK Industries d/b/a Castlegate Homes
  
 v.
  
  
 Melissa
 and Scot Hollmann
 
 
 §
  
 §
  
 §
  
 §
 
 
 From the 352nd District
 Court
  
 of
 Tarrant County (352-227900-07)
  
 November
 21, 2012
  
 Opinion
 by Justice McCoy
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

          It
is further ordered that Appellants, Paul Kramer and PK Industries d/b/a
Castlegate Homes, shall pay all costs of this appeal, for which let execution
issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Bob McCoy

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00136-CV

 

 


 
 
 Paul Kramer and PK Industries d/b/a Castlegate
 Homes
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Melissa and Scot Hollmann
 
 
  
 
 
 APPELLEES 
 
 


 

 

----------

FROM THE 352nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

In nine
issues, Appellants Paul Kramer and PK Industries d/b/a Castlegate Homes
(collectively, Homebuilder) appeal the trial court’s judgment for Appellees Melissa
and Scot Hollmann.  We affirm the trial court’s judgment.




II.
Factual and Procedural Background

The
Hollmanns contacted Kramer about building a home after they saw his name and
phone number on a Castlegate Homes sign.  They entered into a design agreement
for Castlegate, the name under which PK Industries operated, to manage the
home’s design and construction plan development by engaging an architect; they
also entered into a residential construction contract with Castlegate to build
the $2 million home.  PK Industries was the project’s general contractor, and
Kramer was the PK Industries representative with whom the Hollmanns
communicated.

As
construction progressed, the house developed a moisture leak, but Kramer sent
an email to the Hollmanns telling them not to worry about it because it had
been fixed.  After the Hollmanns moved into the house, it developed additional
moisture problems involving the windows, the HVAC system, and the roof, all of
which were installed by different subcontractors.  The Hollmanns continued to
communicate with Kramer, who assured them that he would make everything right,
but after mold appeared in the house, the Hollmanns moved out.

PK
Industries sued Houk Air Conditioning, Inc., and the Hollmanns intervened,
suing several additional parties—including the architect, the roofing company,
and the window subcontractor—for breach of contract, breach of warranty,
negligence, and violations of the Deceptive Trade Practices Act (DTPA).[2]  The
Hollmanns then added Kramer as a defendant in their first amended petition and
sued both PK Industries and Kramer for DTPA violations, breach of contract, breach
of warranty, and negligence.  Kramer represented himself pro se.

The
trial court granted partial summary judgment for some of the contractors on all
of PK Industries’ claims against them except for negligence, which it severed into
a separate case.  The Hollmanns settled with the architect and the roofing
company before trial, and the trial court dismissed them from the suit with
prejudice.  The jury awarded damages to the Hollmanns after finding that (1) PK
Industries breached the residential construction contract, (2) Kramer breached
a warranty and engaged in a false, misleading, or deceptive act or practice,
and (3) Kramer acted on PK Industries’ behalf.  The trial court rendered
judgment accordingly.

III.  Sufficiency

In
its seventh issue, Homebuilder complains that the evidence is legally and
factually insufficient to support the jury’s finding that Kramer and PK
Industries violated the DTPA.  In its ninth issue, it complains that the
evidence supporting the Hollmanns’ DTPA claim against Kramer is legally
insufficient because the claim was barred by limitations.[3]

A. 
Legal and Factual Sufficiency Standards of Review

We
may sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334
(Tex. 1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, “No
Evidence” and “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361,
362–63 (1960).  In determining whether there is legally sufficient evidence to
support the finding under review, we must consider evidence favorable to the
finding if a reasonable factfinder could and disregard evidence contrary to the
finding unless a reasonable factfinder could not.  Cent. Ready Mix Concrete
Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything
more than a scintilla of evidence is legally sufficient to support the
finding.  Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.
1996); Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).  When the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int’l, Inc. v.
Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
credible evidence supporting the finding is so weak, or so contrary to the
overwhelming weight of all the evidence, that the answer should be set aside
and a new trial ordered.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986) (op. on reh’g); Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).

Absent
an objection to the jury charge, the sufficiency of the evidence is reviewed in
light of the charge submitted.[4]  Wal-Mart Stores, Inc.
v. Sturges, 52 S.W.3d 711, 715 (Tex. 2001); City of Fort Worth v.
Zimlich, 29 S.W.3d 62, 71 (Tex. 2000).

B. 
DTPA Violations

With
regard to misrepresentations under the DTPA, the jury was asked in Question No.
7 whether Kramer engaged in any false, misleading, or deceptive act or practice
that the Hollmanns relied on to their detriment and that was a producing cause
of damages to the Hollmanns.  The jury was instructed that “false or deceptive
act or practice” means any of the following:

1.  Representing that
goods or services had or would have characteristics that they did not have; or

2.  Representing that
goods or services are or will be of a particular quality if they were of
another; or

3.  Failing to
disclose information about goods or services that was known at the time of the
transaction with the intention to induce the Hollmanns into a transaction they
otherwise would not have entered into if the information had been disclosed.

The
jury answered “yes” to this question.  The jury also answered affirmatively
Question No. 10 regarding whether Kramer acted on behalf of PK Industries when
he engaged in any of the conduct found in answer to Question No. 7.

In
its seventh issue, Homebuilder argues that the evidence is legally and
factually insufficient to support the jury’s finding that it violated the DTPA
and urges us to hold that Kramer’s statements to the Hollmanns were mere
“puffery.”  In support of its insufficiency argument, it cites five specific
statements made by Kramer after the Hollmanns contacted him about building a
house:  that the house would be a “magnificent home with a quality level rarely
seen in Tarrant County,” that it would be a “kick butt house,” that “this is
going to be a really great house,” that it would be “one of the finest homes in
the City,” and that the Hollmanns would be “pleased as punch.”

1.
Puffery

“Misrepresentations
are actionable under the DTPA ‘so long as they are of a material fact and not
merely “puffing” or opinion.’”  Main Place Custom Homes, Inc. v. Honaker,
192 S.W.3d 604, 624 (Tex. App.—Fort Worth 2006, pet. denied).  Puffery is “an
expression of opinion by a seller not made as a representation of fact.”  Dowling
v. NADW Mktg., Inc., 631 S.W.2d 726, 729 (Tex. 1982).

Courts
consider the circumstances under which a statement was made to determine
whether a statement is an opinion or an actionable misrepresentation, employing
a three-factor test.  Transp. Ins. Co. v. Faircloth, 898 S.W.2d 269, 276
(Tex. 1995); Honaker, 192 S.W.3d at 624.  First, the court will examine
the statement’s specificity.  Honaker, 192 S.W.3d at 624.  “An imprecise
or vague representation constitutes a mere opinion.”  Humble Nat’l Bank v.
DCV, Inc., 933 S.W.2d 224, 230 (Tex. App.—Houston [14th Dist.] 1996,
writ denied).  Second, the court will compare subject-matter knowledge
of the buyer and seller, asking “whether or not [a statement’s] correctness is
a matter of which either of the parties can judge as well as the other,” and
upon which the buyer can reasonably be expected, in the exercise of ordinary
diligence, to have formed his own opinion.  Autohaus, Inc. v. Aguilar,
794 S.W.2d 459, 463 (Tex. App.—Dallas 1990, writ denied) (quoting U.S. Pipe
& Foundry Co. v. City of Waco, 108 S.W.2d 432, 436–37 (Tex. 1937)). 
Third, the reviewing court will ascertain whether the representation refers to
a past, present, or future condition.  Humble, 933 S.W.2d at 230. 
Representations concerning past or present conditions require greater scrutiny
than those concerning future conditions because predictions tend more toward
opinion.  See Autohaus, 794 S.W.2d at 464 (holding that “a general
statement concerning a future event should be looked at differently than a
statement concerning a past or present event or condition, especially when
examining the specificity of a statement involving [future conditions]”).

In Honaker,
we addressed whether a homebuilder’s statements constituted actionable
misrepresentations.  192 S.W.3d at 624.  Upon seeing a house under
construction, the Honakers approached the builder to inquire about the
property.  Id. at 610.  When the Honakers expressed concern about the
house’s position on a steep slope, the builder told them that the “house and
lot [are] as solid as they come,” and that the property “was stable and . . .
there would be no problems with the house or property falling away.”  Id. 
The Honakers bought the house, and problems related to subsidence appeared
within two years.  Id. at 611.  The Honakers sued the builder for DTPA
violations, claiming that the builder’s statements constituted actionable
misrepresentations, id. at 611–12, and they prevailed at trial and on
appeal.  Id. at 624–25.  Specifically, we held that the builder’s
statements were affirmative assertions that the property was stable when it was
not.  Id. at 624.  Additionally, we noted that the builder, having
several years of experience, was in a better position to know the property’s
condition than the Honakers.  Id.

As
an initial matter, we hold without further discussion that the term “kick butt
house” and the assertion that the Hollmanns would be “pleased as punch” are
slang terms constituting an opinion and are not fact assertions.  See
Autohaus, 794 S.W.2d at 464 (holding that words with indefinite meanings do
not constitute actionable misrepresentations).  Likewise, we hold that Kramer’s
claim that the house will be “really great” is too indefinite to constitute an
actionable misrepresentation.  See id.

Kramer’s
remaining two statements are considerably more specific and precise than his
other statements.  See Humble, 933 S.W.2d at 230.  However, they
still lack the degree of specificity necessary to meet the first factor when
compared to the misrepresentations in Honaker. See 192 S.W.3d at
624–25.  The statements in Honaker were specific affirmative assertions
regarding the property’s condition.  Id. at 624.  Indeed, the very
concerns they addressed came to fruition soon after the house was built.  Id.
at 611.  Stating that the property is stable and that there will be no problems
with subsidence speaks directly to a potential problem apparent even to the
buyer, given the property’s location on a steep slope.  Id. at 610.  In
contrast, Kramer’s statements are far less specific and more subjective as
Kramer merely stated that the house would be “magnificent” and one of the
“finest.”  These statements speak only to subjective impressions and contain no
specific representations like those found in Honaker.

Likewise,
these statements concern subjects that could be judged equally by either party
and upon which the Hollmanns could form their own opinions through ordinary
diligence, unlike the knowledge necessary to determine whether a pad has been
properly prepared so as to avoid subsidence—the type of disparity necessary to
show that the seller had superior knowledge.  See id. at 624.  And
Kramer’s statements related to a future condition, tending toward opinion.  Cf.
Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 503–04 (Tex. 2001) (holding
that representations regarding specific future crop yields were more than
puffery).

Based
on the three-factor test, we hold that the statements that the house would be
“a magnificent home with a quality level rarely seen in Tarrant County” and
“one of the finest homes in the city” are expressions of opinion and are
puffery, not representations of fact.

2.
Repairs

Notwithstanding
the specific statements Homebuilder cites, however, we cannot say that there is
legally insufficient evidence to support the jury’s DTPA finding with regard to
any false, misleading, or deceptive act or practice by Kramer.  See City of
Keller, 168 S.W.3d at 827.

A
statement falsely indicating that repairs were successful is actionable under
the DTPA.  See Tex. Bus. & Com. Code Ann. § 17.46(b)(7) (allowing
claims for misrepresenting service quality); Woods v. Littleton, 554
S.W.2d 662, 666 n.6 (Tex. 1977); Gomez v. Moore, No. 12-01-00261-CV,
2003 WL 21355973, at *5 (Tex. App.—Tyler June 11, 2003, no pet.) (mem. op.); Milt
Ferguson Motor Co. v. Zeretzke, 827 S.W.2d 349, 355 (Tex. App.—San Antonio
1991, no writ).  Additionally, the implied warranty to repair in a good and
workmanlike manner applies to suits under the DTPA.  See Tex. Bus. &
Com. Code Ann. § 17.50(a)(2) (West 2011); Melody Home Mfg. Co. v. Barnes,
741 S.W.2d 349, 354 (Tex. 1987) (op. on reh’g).  Good and workmanlike is “that
quality of work performed by one who has the knowledge, training, or experience
necessary for the successful practice of a trade . . . performed in a manner
generally considered proficient by those capable of judging [so].”  Melody
Home Mfg., 741 S.W.2d at 354.

After
the house developed a moisture leak during construction, Kramer sent the Hollmanns
an email telling them, “Please don’t worry about the leak that was recently
fixed.”  When the Hollmanns informed Kramer about mold they discovered shortly
after moving in, Kramer told them, “We feel very strongly we have now
identified the problem.  Moisture in the walls by the leak will be handled
immediately and will not pose a future problem. . . . [T]he sills are the
culprit.”  The next day, Kramer stated, “You can be sure that any nonsense
associated with the resolution of all open issues will cease as of this
moment.”  Kramer replaced the window sills, but according to Melissa Hollmann,
the leaks remained.

Later
that year, Kramer stated in response to an inspector’s report regarding an
exposed attic gas line, “I now understand that covering up this line resulted
in the creation of a water leak that now has to be delt with and it will be
handled.”  Kramer also stated that the house was “very well built and whatever
minor problems that come up will always be handled.”  According to Melissa
Hollmann, the problems with the house at the time were not minor.  She said,
“We had a roof that was leaking.  We had mold on our walls.  Our library was
torn up with mold.  We had water under windows . . . . It was a mess. It was
serious stuff.”  She also said that Kramer did not fix the leak.

Twenty-two
months later, the Hollmanns discovered additional mold and moisture problems. 
In response to the Hollmanns’ complaints, Kramer claimed that he found no
moisture in the walls but stated that any moisture in the walls was “caused by
the irrigation system . . . spraying . . . on the house.”  Homebuilder replaced
the suspect sprinkler heads, but the problem remained.  Further, the Hollmanns’
own investigation found moisture in the walls, contrary to Kramer’s claim.

Finally,
one month before the Hollmanns vacated the house due to mold contamination,
Kramer stated that “there is nothing inherently wrong with the house.” 
Additionally, Kramer claimed that the Hollmanns were “over-react[ing]” and
stated that the problems were not serious enough to justify asking Homebuilder
to buy back the house.  However, Kramer contradicted this claim in two letters
he wrote to the air conditioning and window subcontractors, in which he
acknowledged that the house suffered from “significant mold, air quality, and
related damage problems.”  In one letter, Kramer even admitted that “living in
a home with these conditions probably wouldn’t be acceptable to anyone under
any conditions.”  Additionally, the Hollmanns contradicted Kramer’s claim at
trial with expert reports and testimony showing that the house contained
unhealthy mold levels requiring remediation.

Based
on the above, the jury could have reasonably concluded that Kramer engaged in
false, misleading, or deceptive acts or practices that the Hollmanns relied on
to their detriment and that such acts were a producing cause of damages to the
Hollmanns because Kramer represented that goods or services had or would have
characteristics that they did not have or that goods or services were or would
be of a particular quality when they were of another.  See Tex. Bus.
& Com. Code Ann. § 17.46.  Further, the credible evidence supporting the
finding is not so weak or so contrary to the overwhelming weight of all of the
evidence that the jury’s answer should be set aside.  Therefore, the evidence
is both legally and factually sufficient to support the finding, and we
overrule Homebuilder’s seventh issue.

C. 
Limitations

In
its ninth issue, Homebuilder argues that the evidence is legally insufficient
to establish that Kramer violated the DTPA because the Hollmanns failed to sue
him within the two-year DTPA statute of limitations.  See Tex. Bus.
& Com. Code Ann. § 17.565 (West 2011).

Statute
of limitations is an affirmative defense, and a defendant bears the burden to
plead, prove, and secure findings to support the defense.  See Tex. R.
Civ. P. 94 (requiring a responding party to plead limitations as an affirmative
defense); see also Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 517
(Tex. 1988) (holding that the affirmative defense of limitations must be proven
by the asserting party).  In order to prove that limitations bars a plaintiff’s
cause of action, a defendant must establish the date on which the plaintiff’s
cause of action accrued. Intermedics, Inc. v. Grady, 683 S.W.2d 842, 845
(Tex. App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.).

The
Hollmanns brought both breach of warranty and DTPA claims against PK Industries
when they intervened in PK Industries’ lawsuit against Houk in November 2008. 
In June 2009, the Hollmanns added Kramer under the same claims.  Although PK
Industries pleaded limitations, Kramer, representing himself pro se, did not.  Additionally,
neither party asked the jury to determine the date on which the Hollmanns’ causes
of action accrued or objected when the charge did not ask this question.

Homebuilder
claims that Kramer’s unpleaded limitations defense was tried by consent during
the suit’s summary judgment phase.  After the Hollmanns added Kramer to the
suit, PK Industries moved for summary judgment, claiming that the DTPA claim
was barred by limitations.  PK Industries and the Hollmanns briefed the issue,
and the trial court denied PK Industries’ motion.  Later, Kramer moved for
summary judgment, claiming that the Hollmanns produced no evidence that PK
Industries was Kramer’s alter ego, but he did not raise a limitations defense. 
On appeal, Homebuilder argues that PK Industries’ summary judgment motion
served to raise Kramer’s unpleaded limitations defense and to try it by
consent.

Trial
by consent is an exception to the rule requiring adequate pleadings and occurs
when a party allows an unpleaded claim or defense to be tried and submitted
without objecting to the lack of a pleading.  Tex. R. Civ. P. 67; Roark v.
Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991); In re
A.B.H., 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.) (op. on
reh’g).  An unpleaded limitations defense may be tried by consent.  See
Collins v. Collins, 345 S.W.3d 644, 648 (Tex. App.—Dallas 2011, no pet.) (holding
that unpleaded affirmative defenses may be tried by consent).  However, trial
by consent does not apply in “doubtful situation[s],” and the record must show
that the evidence was developed under circumstances indicating that both
parties understood the issue was in the case.  A.B.H., 266 S.W.3d at
600. 

Homebuilder
claims that the parties understood limitations was an issue in the case as to
Kramer because the parties briefed it in response to PK Industries’ motion for
summary judgment.  However, Kramer and PK Industries are different parties, and
Kramer did not brief the issue during summary judgment proceedings.  Although
the Hollmanns responded to PK Industries’ summary judgment motion, Kramer never
raised a limitations defense, nor was he a party to PK Industries’ summary
judgment motion.  Indeed, the first time the record mentions Kramer in
conjunction with PK Industries’ limitations defense is in Homebuilder’s amended
motion for a new trial.  Further, the only evidence in the record indicating
that Kramer even knew about PK Industries’ limitations defense was the fact
that the Hollmanns served him with their response to PK Industries’ motion.[5]  Therefore,
it does not appear that both Kramer and the Hollmanns understood that the
limitations defense for Kramer was an issue in the case, and we hold that
Kramer’s limitations defense was not tried by consent.  See id.  Because
Kramer waived this affirmative defense by failing to plead it or otherwise
assert it in the trial court, we overrule Homebuilder’s ninth issue.

IV. Remaining
Issues

We
review for an abuse of discretion Homebuilder’s remaining five issues, in which
it complains about the trial court’s decisions to (1) sever its claims against some
of the subcontractors from the Hollmanns’ claims against Homebuilder, (2) restrict
Kramer’s cross-examination of Deepak Ahuja, the Hollmanns’ construction expert,
(3) admit Ahuja’s testimony on repair costs, and (4) exclude photographs and (5)
the construction code book that rebutted Ahuja’s testimony.  See Serv. Corp.
Int’l v. Guerra, 348 S.W.3d 221, 235 (Tex. 2011) (stating that a trial
court’s decision to admit or exclude evidence is reviewed for an abuse of
discretion); F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680,
693 (Tex. 2007) (applying abuse of discretion standard to severance); Austin
Rd. Co. v. Ferris, 492 S.W.2d 64, 74 (Tex. Civ. App.—Fort Worth 1974, writ
ref’d n.r.e.) (stating that the trial court has discretion to manage the scope
and extent of cross-examination).

Homebuilder
has failed to preserve several of these issues for our review.  To preserve a
complaint for appellate review, a party must have presented to the trial court
a timely request, objection, or motion that states the specific grounds for the
desired ruling, if they are not apparent from the context of the request,
objection, or motion.  Tex. R. App. P. 33.1(a); see also Tex. R. Evid.
103(a)(1).  If a party fails to do this, error is not preserved, and the
complaint is waived.  Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991)
(op. on reh’g).  The objecting party must get a ruling from the trial court. 
Tex. R. App. P. 33.1(a)(2), (b).  This ruling can be either express or
implied.  Id.; Frazier v. Yu, 987 S.W.2d 607, 610 (Tex. App.—Fort
Worth 1999, pet. denied).

A.
Severance

In
its first issue, Homebuilder argues that the trial court abused its discretion
by severing its claims against the subcontractors with whom the Hollmanns
settled before trial at the “eleventh hour.”  However, the record does not
reflect that Homebuilder objected to the severance or otherwise sought relief
from the trial court’s decision to sever.  See Tex. R. App. P. 33.1(a); Gammill
v. Fettner, 297 S.W.3d 792, 803 (Tex. App.—Houston [14th Dist.] 2009, no
pet.) (holding that appellants failed to preserve error as to severance
complaint when they did not object to the severance in the trial court). 
Accordingly, Homebuilder has failed to preserve this issue for review, and we
overrule its first issue.

B. Cross-Examination
and Cost of Repair

In
its second issue, Homebuilder asserts that the trial court abused its
discretion by limiting Kramer’s cross-examination of Ahuja, and in its third
issue, it argues that the trial court erred by allowing Ahuja to testify
regarding the cost to repair construction defects.

Kramer
appeared at trial pro se, and the trial court limited his cross-examination of
Ahuja after warning Kramer as follows:

[Y]our questions are becoming repetitive.  You’re
spending a lot of time formulating your questions and beginning to waste time. 
So when we get back from lunch, I’m going to give you 20 more minutes to
examine this witness, and then you will pass the witness and we’ll go to Mr.
Green.

When
trial resumed, Kramer passed the witness to PK Industries’ counsel, who had no
questions.  The trial court then asked Kramer if he had further questions, and
Kramer responded that he had “no further questions.”

When
a party is prevented from conducting a complete cross-examination by the trial
court, the party must object, obtain a ruling, and make an offer of proof as to
the evidence excluded by the trial court in order to preserve error for our
review.  See Tex. R. App. P. 33.1; Palmer v. Miller Brewing Co.,
852 S.W.2d 57, 63 (Tex. App.—Fort Worth 1993, writ denied); see also
Gonzalez v. Gonzalez, No. 13-02-00202-CV, 2003 WL 21674762, at *1 (Tex.
App.—Corpus Christi July 18, 2003, no pet.) (mem. op.) (holding that because
appellant failed to object on the basis of preclusion of full cross-examination
of the appellee during trial, he failed to preserve his complaint for appellate
review).  Because Kramer failed to object and make an offer of proof and
instead affirmatively represented that he had no further questions to ask, he
failed to preserve this complaint for our review, and we overrule his second
issue.

Further,
an appellate brief must contain all points or issues relied upon, argument and
authorities under each point or issue, and all facts relied upon for the appeal
with references to the pages in the record where those facts can be found.  Weaver
v. Sw. Nat’l Bank, 813 S.W.2d 481, 482 (Tex. 1991); see also Tex. R.
App. P. 38.1(f), (i).  Although Homebuilder sets out its third issue regarding
Ahuja’s testimony on the cost of repairs in the “Issues Presented” section of
its brief, it presents no argument, citations to the record, or citations to
authority to support this issue.  Therefore, we overrule Homebuilder’s third
issue for inadequate briefing.  See Tex. R. App. P. 38.1(i).

C. Photographs
and Code Book

In
its fourth and fifth issues, Homebuilder complains that the trial court erred
by admitting into evidence only one photograph showing a space between the
stone veneer and the wood frame structure of the Hollmanns’ house and by
excluding the rest of its photographs and by excluding a building code book
adopted by the City of Colleyville, where the Hollmanns’ house was built.

During
trial, one of the major issues was the cause of the moisture problem that led
to the development of mold.  Several witnesses testified regarding the lack of
an air gap between the house’s stone veneer and the wood frame structure as a
potential cause of the problem, and Ahuja, the Hollmanns’ expert, testified
that the house was improperly constructed with no gap, causing the moisture
problem.  While questioning Kramer, PK Industries attempted to introduce
multiple photographs showing a one-inch gap between the stone veneer and the
wood frame structure, but Kramer was able to identify the specific location
depicted by the photographs in only one of the photographs.  After two
unrecorded bench conferences, the trial court admitted the only photograph that
Kramer was able to identify and excluded all of the others.  PK Industries did
not ask to have the excluded photographs included in the record.

When
Kramer offered the code book into evidence, the Hollmanns successfully
objected, arguing that it had not been produced during discovery, and Kramer
failed to respond to their objection.  After a recess, PK Industries’ attorney
argued that the code book had been made available during discovery in response
to the Hollmanns’ request for production, offering his response to the request
as proof, which response stated that the documents were produced “subject to
and without waiving the foregoing objections, none other than as produced
elsewhere.”  The trial court ruled that PK Industries offered insufficient
evidence to prove that it had produced the code book during discovery.  Neither
Kramer nor PK Industries sought to have the excluded code book included for
record purposes during trial.  After the case was submitted to the jury, Kramer
moved for the trial court to reopen evidence in order to introduce a City of
Colleyville ordinance referencing the code book, and the trial court denied the
motion.

If
error occurs in the exclusion of evidence, to preserve error, the complaining
party must (1) timely object or move to admit, stating the specific ground of
objection if the specific ground is not apparent from the context and (2)
present a formal bill of exception to the trial court unless the substance of
the excluded evidence was apparent from the context within which the questions
were asked.  Tex. R. App. P. 33.2; Tex. R. Evid.103(a)(2).  “Appellate review
of alleged improperly excluded evidence is not possible without a showing of
what evidence would have been presented.”  Hilliard v. Holland, No. 02-03-00287-CV,
2004 WL 2712159, at *1 (Tex. App.—Fort Worth Nov. 24, 2004, no pet.) (mem. op.)
(citing Wade v. Comm’n for Lawyer Discipline, 961 S.W.2d 366, 374 (Tex.
App.—Houston [1st Dist.] 1997, no writ)).  The trial court excluded the
photographs following unrecorded bench conferences, and Homebuilder did not
seek to include the photographs in the record, thereby presenting nothing for
our review.  See id.  Likewise, the trial court excluded the code book,
and neither Kramer nor PK Industries sought to include the code book in the
record, thus presenting nothing for our review.  See Tex. R. App. P.
33.2; Tex. R. Evid. 103(a)(2); Hilliard, 2004 WL 2712159, at *1.  We
overrule Homebuilder’s fourth and fifth issues.[6]

V.
Conclusion

We
affirm the trial court’s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL: 
DAUPHINOT,
MCCOY, and MEIER, JJ.

 

DELIVERED: November 21, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Bus. &
Com. Code Ann. § 17.46 (West 2011).





[3]When the judgment rests on
multiple theories of recovery and any one theory is valid, we do not address
the other theories.  George Grubbs Enters., Inc. v. Bien, 881 S.W.2d
843, 851 n.7 (Tex. App.—Fort Worth 1994), rev'd on other grounds, 900
S.W.2d 337 (Tex. 1995).  The trial court’s judgment rests upon the jury’s
finding that Kramer breached warranties and violated the DTPA.  Because the
DTPA violations alone are sufficient to support the trial court’s judgment, we
do not reach Homebuilder’s eighth issue concerning Kramer’s breach of warranty
liability.





[4]In its sixth issue,
Homebuilder complains about a portion of Question No. 7, upon which the jury
found that Kramer had engaged in false, misleading, or deceptive acts or
practices.  However, neither PK Industries nor Kramer objected to any portion
of Question No. 7 before the question was submitted to the jury.  Therefore, we
overrule Homebuilder’s sixth issue because this complaint was not preserved for
our review, see Tex. R. App. P. 33.1; Tex. R. Civ. P. 274;
Catalanotto v. Meador Oldsmobile LLC, No. 02-10-00044-CV, 2011 WL 754413,
at *8 (Tex. App.—Fort Worth Mar. 3, 2011, no pet.) (mem. op.), and we review
the sufficiency of the evidence to support the finding challenged in
Homebuilder’s seventh issue in light of this instruction. 





[5]PK Industries did not
serve a copy of its summary judgment briefs on Kramer.





[6]Further, the complaint on
appeal must be the same as that presented in the trial court.  See Banda v.
Garcia, 955 S.W.2d 270, 272 (Tex. 1997).  An appellate court cannot reverse
based on a complaint not raised in the trial court. Id.  Although
Homebuilder argues in part of its fifth issue that the trial court erred by
excluding the code book because it was a “publicly available record” and “was
addressed during depositions,” we do not reach these arguments because they
were not made in the trial court.  See id.