

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00071-CV

_____

IN THE INTEREST OF J.R., A CHILD

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-705314-21

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant L.T. (Mother), appearing pro se, appeals the trial court's "Final Order in Suit to Modify Parent–Child Relationship" in which she was ordered to pay medical support, dental support, retroactive child support, and a judgment for past-due medical support (which related to unreimbursed dental expenses) to Appellee A.R. (Father) for their son J.R (Jonathan),[1] who was eighteen years old at the time of the hearing. Mother sets forth thirty-five issues in her brief; but even after our giving her multiple opportunities to file a compliant brief that includes citations to the record and to legal authorities, she has waived most of her appellate issues.[2] After reviewing the arguments that are adequately briefed and after determining that Father did not plead for a judgment against Mother for unreimbursed dental expenses, we modify the final order to delete that section and affirm as modified.

## II. Background

Father and Mother have never been married to each other. In a 2007 "Order Establishing the Parent–Child Relationship," a district court in Brewster County found that Father is the father of Jonathan, who was born in 2005. Pursuant to that

---

[1]We use a pseudonym for J.R. even though he turned eighteen prior to the final order's rendition. *See generally* Tex. Fam. Code Ann. § 109.002(d).

[2]Mother filed numerous briefs, but we use her most recently filed brief (which is file-marked October 25, 2023) because although it is still deficient, it is the most compliant of the briefs that she filed.

order, Father was ordered to pay Mother child support, and Mother was given the right to determine Jonathan's primary residence. Jonathan lived with Mother in West Texas and visited Father in the Benbrook area until July 2019.

In July 2019, Jonathan went to live with Father.[3] Shortly thereafter, the parties participated in a negotiation conference and agreed to the entry of a "Child Support Review Order." In that order, Father was relieved of his child-support obligation: "*PARTIES AGREE TO ZERO CHILD SUPPORT AS CHILD [JONATHAN] IS CURRENTLY LIVING WITH NON-CUSTODIAL PARENT.*" The order further required Father and Mother to each pay fifty percent of "all additional health care expenses, including vision and dental[-]care expenses."

Approximately two years after Jonathan went to live with Father, Father filed in the 360th District Court in Tarrant County an amended petition to modify the parent–child relationship requesting that the trial court order Mother to pay child support, including retroactive child support; Jonathan's health and dental insurance premiums; and half of Jonathan's uninsured medical expenses.[4] Father's petition also requested that he be appointed as the sole managing conservator of Jonathan, that

---

[3]The parties dispute whether this was meant to be a permanent arrangement (as Jonathan was starting high school) or a temporary arrangement while Mother recuperated from health issues and grieved her mother's death.

[4]Around the same time that Father filed suit in the 360th District Court (the trial court), Mother initiated a habeas corpus suit against him in the 233rd District Court and filed other motions there. Father filed a motion to consolidate the two cases, and the case from the 233rd District Court was consolidated into the case in the trial court.

Mother be appointed as the possessory conservator, and that Mother be awarded a standard possession schedule.

At the February 24, 2023 modification hearing, the trial court heard testimony from Father, Mother, and an employee from Family Court Services who had interviewed Jonathan. Because Jonathan was eighteen years old at the time of the hearing on the modification petition and was on the cusp of graduating from high school, the trial court stated that it would not make any orders as to conservatorship, possession, and access. The hearing thus focused on child support, medical support, and dental support.

Father testified that his child-support obligation was terminated by agreement within two months of when Jonathan came to live with him. Father explained that he did not seek child support at that time because he "didn't feel it was necessary. Everything was going well." But as time went on and Mother would not help with Jonathan's medical and dental bills, Father "felt like maybe it was time" to seek child support from her.

Father testified that he had incurred expenses for providing food,[5] clothing, and a vehicle for Jonathan, as well as for Jonathan's dental procedures, which included the removal of several baby teeth prior to his getting braces and later having his wisdom teeth removed. Father asked the trial court to order Mother to pay the

---

[5]Father testified, "[F]ood is a big one."

4

guideline child support based on the federal minimum wage or $175.38 per month[6] starting March 1, 2023, and ending when Jonathan graduated high school. Father also sought retroactive child support in the amount of $3,858.34[7] from July 1, 2021. Father further requested that the trial court order Mother to pay $110 per month to cover the cost of Jonathan's health insurance and $4.86 per month for his dental insurance. Father testified that he had paid $7,907 for Jonathan's dental expenses[8] and that Mother's half was $3,953.50.

Mother admitted that she had not provided any type of financial support for Jonathan while he lived with Father. Mother said that she has a master's degree in software engineering but that at the time of the modification hearing, she was not employed and was "living off the government." She explained that she had not worked since 2018 because she had been a full-time student seeking to obtain her PhD but that she had been forced to quit in the winter of 2021 due to problems with

---

[6]Early on during the hearing, the trial court stated that "[$]175.38 [per month] is the amount [of child support] for someone who makes minimum wage with one child before the [c]ourt," and Father's counsel used this same figure when questioning Father. As discussed below, this amount is less than the amount calculated by applying the child-support guidelines to the federal minimum wage.

[7]It is unclear how Father calculated this amount. From July 1, 2021 to February 24, 2023 (the date of the hearing), is nineteen months, and nineteen months of $175.38 monthly child support totals $3,332.22, which is what the trial court awarded.

[8]The record includes receipts for the dental expenses, which were incurred from January 2020 to December 2022.

her student loans. Mother agreed that any orders for child support would be based on the federal minimum wage.

At the conclusion of the hearing, the trial court gave the following oral rendition of its judgment:

> Current child support is set at $175.38 beginning March 1st, 2023. Medical support is set at $110 a month beginning March 1st, 2023. I'm setting dental support at $3 a month beginning March 1st, 2023.
>
> That's a little less than you asked for, but 9 percent of gross, we would exceed that if I did anything more than that.
>
> Retroactive support is set at $3,332.22 as of February 24th, 2023. This shall be paid at the rate of $30 a month beginning March 1st, 2023.
>
> When current support is no longer due, the mother shall pay child support at the rate -- shall pay the retroactive support back at the rate of $205.38 per month.
>
> So when he graduates from high school, then that payment goes up to [$]205.38.
>
> The mother owes the father $3,953.50 in past[-]due medical support as of February 24th, 2023. It shall be paid at the rate of $40 a month until current medical support is no longer due. Thereafter, the mother shall pay medical support at the rate of $153 a month until all medical support is paid in full.

At the conclusion of the hearing, the trial court informed Mother about the preparation of the final order:

> [Father's counsel] is going to prepare an order that comports with the rendition. She's going to email it to you. If she hears an objection to the form of the order -- not that you disagree with the order but does the order comport with what I ordered -- she'll set it for hearing on motion to sign.

6

> If she does not hear an objection from you, she can present it to me for signature if you don't respond within ten days of receiving an email from her. So make sure you check your email that you gave the [c]ourt and make sure that if you object, that you let [Father's counsel] know so she can set it for hearing.

Seven days later, Mother filed her notice of appeal and attached two requests for findings of fact and conclusions of law pursuant to Texas Rules of Civil Procedure 296 and 297 and Texas Family Code Section 6.711,[9] as well as language that appears to request child-support findings under Texas Family Code Section 154.130(b). We notified Mother that her notice of appeal appeared to be premature because the trial court had not signed an order. Father then filed a motion to sign a final order.

The trial court held a hearing on Father's motion to sign a final order and on Mother's request for findings of fact. At the hearing, Mother agreed that the proposed order prepared by Father's counsel comported with the trial court's prior oral rendition. The trial court signed the final order that same day without making findings of fact and conclusions of law. Mother's appeal then proceeded.

## III. The Law on Modifying Support Orders and the Standard of Review

A court may modify a child-support order if the circumstances of the child or a person affected by the order have materially and substantially changed since the previous child-support order was rendered. Tex. Fam. Code Ann. § 156.401(a)(1), (a-1). The person seeking modification has the burden of establishing a material and

---

[9]This section deals with findings in a suit for dissolution of marriage and thus is inapplicable here. *See* Tex. Fam. Code Ann. § 6.711.

7

substantial change. *In re A.A.T.*, 583 S.W.3d 914, 920 (Tex. App.—El Paso 2019, no pet.).

We review the trial court's modification of orders governing conservatorship, possession, child support, and medical support for an abuse of discretion. *In re R.R.K.*, No. 02-20-00302-CV, 2022 WL 1257136, at *3 (Tex. App.—Fort Worth Apr. 28, 2022, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

Whether the evidence supporting the decision is legally and factually sufficient is relevant in deciding whether the trial court abused its discretion. *R.R.K.*, 2022 WL 1257136, at *4. In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have enough information upon which to exercise its discretion; and (2) did the trial court err in applying its discretion? *In re C.F.*, 576 S.W.3d 761, 773 (Tex. App.—Fort Worth 2019, orig. proceeding & no pet.). The applicable sufficiency review comes into play in answering the first prong. *Id.* Concerning the second prong of our abuse-of-discretion inquiry, we resolve, based on the elicited evidence, whether the trial court's decision was reasonable. *Id.* A trial court does not abuse its discretion by basing its decision on conflicting evidence if some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

## IV. Discussion

### A. Briefing Waiver

As noted in the introduction, even Mother's most recently filed brief is deficient. The brief's statement of facts contains no citations to the actual record.[10] *See* Tex. R. App. P. 38.1(g). Moreover, despite listing thirty-five issues (some of which are duplicates), Mother's brief's argument section sets forth only four headings—none of which mentions the issue(s) to which it corresponds. Accordingly, we initially hold that Mother has failed to preserve all issues sans those covered in her argument section, and we overrule those unpreserved issues. *See* Tex. R. App. P. 38.1(f), (i); *see also In re S.B.*, No. 02-23-00017-CV, 2023 WL 6475637, at *4–5 (Tex. App.—Fort Worth Oct. 5, 2023, no pet.) (mem. op.) (observing that pro se appellants are held to

---

[10]Instead, Mother cites to "Vol. 8 Page 337" and to "Vol. 8 Page 338," which appear to refer to two pages from the 2007 "Order Establishing the Parent–Child Relationship" from Brewster County; we were forced to decipher that on our own as the appellate record before us does not contain a volume 8 or any volume with over 300 pages. That order is included multiple times in the clerk's record, but Mother failed to include citations to the appellate record.

Additionally, Mother includes multiple references to "(See Exhibits)," which is presumably a reference to the documents in the appendix to her brief. The appendix to Mother's brief spans from page 46 to page 275 for a total of 230 pages, despite that the exhibits admitted at trial span fewer than 50 pages. It is clear that many of the documents attached to Mother's brief are not part of the appellate record and therefore cannot be considered on appeal. *See Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 773 (Tex. App.—El Paso 2015, no pet.) ("Documents attached to a brief as an exhibit or appendix, but not appearing in the appellate record, cannot be considered on appellate review."); *see also Tait v. Pepsico Inc.*, No. 02-22-00290-CV, 2023 WL 2325194, at *3 n.8 (Tex. App.—Fort Worth Mar. 2, 2023, no pet.) (mem. op.) (collecting cases).

the same standards as a licensed attorney and must comply with applicable laws and rules of procedure, including those setting forth the requirements for appellate briefs). We discuss the issues that Mother covers in her argument section below.

### B. Mother's Four Argument Headings

#### 1. Mother's Access Argument

The first heading in Mother's brief's argument section is "Noncompliance and Violations of the Opposing Party." The crux of Mother's argument in this section is that Father violated the 2007 order from Brewster County by denying her access to Jonathan. As noted above, Jonathan turned eighteen prior to the modification hearing. Additionally, the final order includes the following finding regarding how Jonathan's age affected the access claims: "The [c]ourt finds that the child made the subject of this suit reached the age of eighteen since the filing of the Petition to Modify the Parent–Child Relationship. Accordingly, the [c]ourt makes no provisions for conservatorship or possession of and access to the child." The trial court thus determined that claims for possession, conservatorship, and access were no longer at issue. And the law supports the trial court's conclusion. *See In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-23-00027-CV, 2023 WL 4610048, at *1 (Tex. App.—San Antonio July 19, 2023, orig. proceeding) (mem. op.) ("When a child turns eighteen years old, issues of conservatorship become moot." (quoting *In re J.D.*, No. 04-19-00239-CV, 2020 WL 4607015, at *1 (Tex. App.—San Antonio Aug. 12, 2020, no pet.)

(mem. op.))). Accordingly, we overrule the issues raised under Mother's brief's first argument heading.[11]

### 2. Mother's Challenges to the Medical Support and Reimbursement

The second heading in Mother's brief's argument section is "Request for Medical Support and Reimbursement," and under this heading, she raises various arguments challenging the portion of the trial court's order requiring her to pay for medical and dental insurance and a "Medical Support Judgment" related to Jonathan's past dental bills. After addressing Mother's challenges to the portion of the order requiring her to pay for Jonathan's medical and dental insurance, we explain why the trial court abused its discretion by ordering her to pay for unpleaded unreimbursed dental expenses.

Mother argues that Father refused to accept the dental insurance that she maintained for Jonathan and that Father had failed to maintain health insurance for Jonathan. No evidence was presented at trial that Mother had dental insurance for Jonathan or that Father had failed to maintain health insurance for Jonathan. Based on the evidence presented, we cannot say that the trial court abused its discretion by

---

[11]To the extent that Mother's complaints under her brief's first argument heading are not claims challenging possession, conservatorship, and access, we overrule them as inadequately briefed. *See Zhao v. Two Steppin Towing*, No. 02-21-00351-CV, 2022 WL 11456754, at \*4 (Tex. App.—Fort Worth Oct. 20, 2022, pet. denied) (mem. op.) (holding certain challenges were waived due to inadequate briefing).

ordering Mother to pay medical and dental support to cover Jonathan's health and dental insurance.[12]

In her brief, Mother also argues that she "does not owe . . . medical/dental reimbursement." The record demonstrates that Father's modification petition requested that Mother "be ordered to pay for . . . (50%) of the child's uninsured medical expenses."[13] *See generally* Tex. Fam. Code Ann. § 154.183(c)(1). At trial, Father did not request that Mother be ordered to pay fifty percent of Jonathan's uninsured medical expenses, nor did he put on evidence of any uninsured medical expenses. Instead, Father testified to and put on evidence of Jonathan's past dental expenses totaling $7,907 and said that Mother's portion was $3,953.50. Based on the evidence of Jonathan's past dental expenses, it appears that the trial court attempted to craft a work-around that fit Father's pleadings and thus included a "Medical Support Judgment" in the final order—requiring Mother to pay $3,953.50 for being "in arrears on medical support"—notwithstanding that the amount was not for

---

[12]Mother does not challenge the amount of medical support and dental support that she was required to pay; instead, she argues simply that she "does not owe [Father] child support, retroactive child support, and medical/dental reimbursement." We therefore need not address the amounts that were calculated by the trial court for medical and dental support. *See* Tex. R. App. P. 47.1.

[13]Father's request ignored that pursuant to the 2019 agreed order, the parties were ordered to pay fifty percent of "all additional health care expenses, including vision and dental[-]care expenses." The record is silent regarding why Father did not file a motion for enforcement or to confirm an arrearage regarding Jonathan's unreimbursed dental expenses.

medical support but was for Jonathan's past dental expenses. *See generally id.* § 154.181.

This is not a scenario in which only the wrong terminology was used. Instead, there is no pleading or motion to support a portion of the final order. Father's amended petition requested that the trial court order Mother to pay "guideline child[-]support payments," retroactive child-support payments, Jonathan's health and dental insurance premiums, and fifty percent of Jonathan's uninsured medical expenses; Father made no mention of past dental expenses. Father did not file a motion to enforce the 2019 order requiring Mother to pay fifty percent of Jonathan's past dental expenses, nor did he seek a money judgment for an arrearage for past dental expenses in his motion to modify. *See id.* § 157.263(a); *Holmes v. Williams*, 355 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("A cumulative money judgment for past-due child support results only after the obligee files a motion for the enforcement of child support requesting a money judgment for arrearage.").

Moreover, we cannot conclude that the matter of unreimbursed dental expenses was tried by consent. As this court has previously stated,

> [T]rial by consent is a doctrine that is only intended to cover the exceptional case in which it clearly appears from the record as a whole that the parties tried the unplead[ed] issue. It is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation.
>
> To determine whether an issue was tried by consent, the court must examine the record not for evidence of the issue[] but rather for evidence of trial of the issue. Consent may be found only where

evidence regarding a party's unpleaded issue is developed under circumstances indicating [that] both parties understood the issue was in the case[] and [where] the other party failed to make an appropriate complaint.

*In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g) (footnotes omitted).

Here, Mother was questioned at trial regarding whether she understood that she was required to pay half the cost of Jonathan's dental expenses, and she responded, "Yeah." But there is no indication that Mother understood that by Father's introducing receipts from Jonathan's dental procedures, Father was seeking a judgment against her for Jonathan's prior unreimbursed dental expenses. *Cf. id.* (evaluating whether conservatorship was tried by consent and holding that mother was not made aware that father was seeking sole managing conservatorship based on social worker's recommendation that mother be appointed sole managing conservator). Evidence in the record of dental expenses, without more, is not enough to demonstrate that the issue was tried by consent.

We hold that the trial court abused its discretion by including in the final order a "Medical Support Judgment" confirming an unpleaded arrearage for dental expenses. Accordingly, we overrule the arguments that Mother raised under her second argument heading challenging the portion of the final order requiring her to pay for Jonathan's medical and dental insurance, but we sustain Mother's challenge to the portion of the final order that is labeled as "Medical Support Judgment," which is

mislabeled and actually confirms an unpleaded arrearage for unreimbursed dental expenses.[14]

### 3. Mother's Child-Support Challenges

The third heading in the argument section in Mother's brief is "Indigent Circumstances/Child is of Legal Age/Emancipation." Under this heading, Mother first challenges whether Father is Jonathan's father. Although Mother made a brief mention of this in the trial court, Father's counsel objected to that line of questioning, and the trial court sustained the objection. Mother did not have any document on file challenging Father's paternity, and the 2007 order from Brewster County contains a parentage section with a finding that Father is Jonathan's biological father and ordering "that the parent–child relationship is established between [them]." Mother cannot now collaterally attack the 2007 order. *See Parsons v. Parsons*, 648 S.W.3d 354, 357–58 (Tex. App.—Texarkana 2021, pet. denied) ("Because the validity of those [modification and child-support] orders is presumed and [because] the face of those orders does not show that they are void, [appellant] fail[ed] to demonstrate that they can be collaterally attacked.").

---

[14]Having determined that there is no pleading to support the "Medical Support Judgment" that required Mother to pay half of Jonathan's prior dental expenses, we need not address Mother's other arguments related to the dental expenses. *See* Tex. R. App. P. 47.1. To the extent that Mother raises conservatorship issues in this section, we overrule them as moot because Jonathan is over eighteen. *See Tex. Dep't of Fam. & Protective Servs.*, 2023 WL 4610048, at *1; *J.D.*, 2020 WL 4607015, at *1.

Mother next reasserts her access arguments that she raised under her first argument heading, which we have already overruled.

Mother then describes her "indigent circumstances" and argues that she cannot afford to pay child support. But she states that she "wants to work. She has an extensive education and wishes that she could work to provide for herself better. She applies to jobs constantly, gets interviewed, but simply no company will offer a job. [She] can prove this with respect to Texas Family Code § 154.066." The Family Code section that Mother cites—which is the only legal authority cited under her third argument heading—deals with intentional unemployment or underemployment. *See* Tex. Fam. Code Ann. § 154.066. The trial court, however, did not find that Mother was intentionally unemployed or underemployed but instead used the minimum-wage presumption due to the lack of information about what salary Mother could make if she were employed because she had been out of the workforce from 2018 to 2021 while pursuing her PhD. *See id.* § 154.068(a) (stating that "[i]n the absence of evidence of a party's resources, . . . the court shall presume that the party has income equal to the federal minimum wage for a 40-hour week to which the support guidelines may be applied"); *M.G. v. T.G.*, No. 02-21-00433-CV, 2023 WL 2178762, at *4 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.) (applying minimum-wage presumption when mother was unemployed); *W.D. v. R.D.*, No. 02-18-00328-CV, 2019 WL 2635563, at *8 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) (stating in a case in which the mother was unemployed that "[t]he lack of specific evidence of

16

[mother's] net resources required the trial court to presume that she had a salary equal to the federal minimum wage").

Furthermore, Mother implicitly argues that she should not be ordered to pay child support because Jonathan has a full-time job and "can legally provide for himself financially and is able to manage his own finances." Again Mother cites no authority to support her argument. *See Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) (stating that the "[f]ailure to cite applicable authority or provide substantive analysis waives an issue on appeal"). Although the record demonstrated that Jonathan works part-time at Chick-fil-A, no evidence supports Mother's contention that he can provide for himself financially or that he can meet all his needs with his part-time job. Moreover, the record demonstrates that Jonathan was still in high school; therefore, Mother was still on the hook for child support because the Family Code requires a parent to help support his child, even if the child is over eighteen years of age, so long as that child meets enrollment and attendance requirements for a program leading to a high school diploma. *See* Tex. Fam. Code Ann. § 154.002 (entitled "Child Support Through High School Graduation"); *Sweet v. Sweet*, No. 14-22-00133-CV, 2023 WL 6978986, at *1 n.2 (Tex. App.—Houston [14th Dist.] Oct. 24, 2023, no pet.) (mem. op.).

Accordingly, we hold that the trial court did not abuse its discretion by ordering Mother to pay child support, and we overrule the arguments under her third heading.

### 4. Mother's Remaining Challenges to the Order

The fourth and final heading in the argument section of Mother's brief is labeled "Abuse of Discretion by Trial Court Judge." Mother makes multifarious statements under this heading, and from those statements, we attempt to ascertain her arguments.

In the first paragraph of that section, Mother argues that the trial court

> failed to recognize that there are no grounds for a modification of the Order Establishing the Parent–Child Relationship and/or child support. The non[]custodial parent refused to return the child to [Mother], [the] primary custodial parent, after the temporary period she initially consented to. (See Texas Family Code, Title 5, Ch[.] 156, §[§] 156.101,[15] 156.409[16]).

To the extent that Mother raises a one-sentence argument about the absence of any grounds for modification, this argument is inadequately briefed. *See Huey*, 200

_____

[15]Section 156.101 deals with a modification to conservatorship, possession, or access. Tex. Fam. Code Ann. § 156.101. As noted above, Jonathan's age mooted any modification on these grounds.

[16]Section 156.409 addresses modifying child support when there has been a change in physical possession of the child:

> The court shall, on the motion of a party or a person having physical possession of the child, modify an order providing for the support of the child to provide that the person having physical possession of the child for at least six months shall have the right to receive and give receipt for payments of support for the child and to hold or disburse money for the benefit of the child if the sole managing conservator of the child or the joint managing conservator who has the exclusive right to determine the primary residence of the child has . . . voluntarily relinquished the primary care and possession of the child[.]

Tex. Fam. Code Ann. § 156.409(a)(1).

S.W.3d at 854. Even if we were to reach the merits of such argument, the record demonstrates a change in physical possession, increased expenses for food and clothing, and a change in Jonathan's dental needs. *Cf. Danburg v. Danburg*, 444 S.W.2d 845, 848 (Tex. App.—Houston [14th Dist.] 1969, no writ) (holding that adjustment in support order was justified because evidence showed that subsequent to the original support order, a circumstance had arisen that required costly medical treatment for the parties' child). *See generally In re H.D.C.*, 474 S.W.3d 758, 766 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("In deciding whether a material and substantial change of circumstances has occurred, a trial court is not confined to rigid or definite guidelines.").

In the remainder of her first paragraph, Mother appears to argue that the trial court should not have ordered her to pay child support because Father had allegedly refused to return Jonathan to her. Mother's argument ignores that courts cannot condition child support on possession of or access to a child. *See* Tex. Fam. Code Ann. § 154.011 (stating that a court may not render an order that conditions the payment of child support on whether a managing conservator allows a possessory conservator to have possession of or access to a child); *Brazell v. Brazell*, No. 13-00-067-CV, 2001 WL 34616781, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 26, 2001, no pet.) (not designated for publication) (overruling father's argument that the trial court erred by refusing to abate or lower child-support payments because father did not have access to his child).

In her second paragraph, Mother states that if the trial court had heard the case from the 233rd District Court, the trial court

> would have known that on the child[-]support portal, [Father] was already listed as the primary custodial parent before a hearing ever took place. There has been continuous foul play by the other party in this case, resulting in hi[s] illegally defying the Order Establishing [the] Parent–Child Relationship that was already in place and has been in place since October 26, 2007, . . . as well as Texas Family Code, Title 5, Ch. 231, § 231.001,[17] § 231.0011,[18] Administration and Designation of the Title IV-D Program.

We construe Mother's argument to be that no modification was necessary due to the information about conservatorship that was allegedly reflected in the child-support portal. Mother fails to explain on appeal how such information would prevent the trial court from modifying the August 2019 child-support review order, which did not order either party to pay child support. *See generally Huey*, 200 S.W.3d at 854. The remainder of Mother's second paragraph regarding Father's allegedly illegal conduct appears to raise conservatorship issues, which were mooted by Jonathan's age. *See Tex. Dep't of Fam. & Protective Servs.*, 2023 WL 4610048, at *1; *J.D.*, 2020 WL 4607015, at *1.

In her one-sentence third paragraph, Mother argues that in ordering her to pay child support, the trial court did not properly calculate her disposable income and net

---

[17]*See* Tex. Fam. Code Ann. § 231.001 (stating that "[t]he office of the attorney general is designated as the state's Title IV-D agency").

[18]*See* Tex. Fam. Code Ann. § 231.0011 (entitled "Development of Statewide Integrated System for Child Support, Medical Support, and Dental Support Enforcement").

resources in accordance with the law, citing Texas Rules of Civil Procedure 296 through 299 and eleven Family Code sections. Even assuming that Mother had adequately briefed this issue, her argument fails. *See Huey*, 200 S.W.3d at 854. As mentioned above, in the absence of evidence of a party's resources, the trial court *shall* presume that the party has income equal to the federal minimum wage for a forty-hour week to which the support guidelines may be applied. Tex. Fam. Code Ann. § 154.068(a). Here, the trial court was required to apply the minimum-wage presumption because the evidence showed that Mother was unemployed, that she had been unemployed for several years, and that she was actively seeking employment. *See M.G.*, 2023 WL 2178762, at *4 (applying minimum-wage presumption when mother was unemployed). As explained in *M.G.*, "a person earning the federal minimum wage [$7.25 an hour] would gross $290 per week and $15,080 per year ($290 multiplied by 52), or $1,257 monthly." *See id.*; *see also* 29 U.S.C.A. § 206(a)(1)(C) (setting forth federal minimum wage). Under the "low-income multiple family adjusted guidelines" for child support,[19] a person with one child before the court must pay fifteen percent of her monthly net resources. *See* Tex. Fam. Code Ann. § 154.129(b). Thus, even without adjusting for the difference between gross and net wages, in the absence of evidence about the amount of Mother's income, the trial court could have ordered her to pay no more than $188.55 per month. The trial court

---

[19]Mother had two other children from another relationship, and she received child-support payments from their father.

ordered Mother to pay only $175.38 per month. Mother does not offer any alternative calculation or provide argument for why it was not mandatory for the trial court to apply the minimum-wage presumption. *See generally Huey*, 200 S.W.3d at 854. We hold that the trial court did not abuse its discretion by calculating Mother's net resources based on the minimum-wage presumption and ordering her to pay child support of $175.38 per month.

In her fourth paragraph, Mother argues that the trial court did not prepare findings of fact and conclusions of law "in accordance with the child[-]support guidelines." As noted in the background section above, Mother's notice of appeal included two requests for findings of fact and conclusions of law,[20] and the trial court was aware of the request for findings, stating on the record at the outset of the hearing on the motion to sign that "[t]he matter before the [c]ourt [was] a motion to sign a final order and findings of fact." Although the trial court did not file findings of fact, we conclude that such error was harmless because Mother was not prevented from presenting her case to this court.

---

[20]Mother's brief contains a page labeled "Request for Findings of Fact and Conclusions of Law." A similar document (but with different formatting) is also included in the appendix to her brief. These documents differ slightly from those that Mother filed with her notice of appeal. To the extent that Mother is requesting this court to make findings of fact and conclusions of law, we cannot do so. *See Livingston v. Erlandson*, No. 07-22-00315-CV, 2023 WL 2658748, at *1 n.1 (Tex. App.—Amarillo Mar. 24, 2023, no pet.) (order) ("[A]ppellate courts in Texas do not have the power to issue findings of fact and conclusions of law based upon the rulings of the trial court[;] only the trial court may do so.").

Mother's requests for findings of fact and conclusions of law did not specifically mention Section 154.130, which requires a trial court to make net-resource findings in rendering a child-support order if a party files a written request with the court before the order is signed; however, the wording that she used requested findings regarding her net resources. *See* Tex. Fam. Code Ann. § 154.130(a)(1), (b). We presume, without deciding, that the trial court was required to make findings under Section 154.130 and erred by failing to do so. *See Duffey v. Duffey*, No. 14-16-00144-CV, 2017 WL 6045569, at *8 (Tex. App.—Houston [14th Dist.] Dec. 7, 2017, pet. denied) (mem. op.). The evidence at trial did not contain sufficient information for the trial court to calculate Mother's net resources, and thus the trial court had to order child support based on the presumption that she has income equal to the federal minimum wage for a forty-hour work week. *See id.* (citing Tex. Fam. Code Ann. §§ 154.062(b), 154.068). As demonstrated above, Mother was able to challenge the amount of child support that the trial court ordered. Accordingly, we conclude that the trial court's presumed error in failing to file Section 154.130(b) findings was harmless because it did not prevent Mother from properly presenting a case to this court. *See id.* at *9; *In re H.D.V.*, No. 05-15-00421-CV, 2016 WL 4492702, at *11 (Tex. App.—Dallas Aug. 26, 2016, pet. denied) (mem. op.). We reach the same conclusion as to the findings of fact and conclusions of law that Mother requested under the Rules of Civil Procedure. *See In re I.J.D.*, No. 13-23-00005-CV, 2023 WL 5487381, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2023, no pet.) (mem.

23

op.) (holding that father was not harmed by trial court's failure to issue findings of fact and conclusions of law under Rules 296 and 297 in modification case because he was not prevented from properly presenting a case on appeal).

In the next-to-the-last argument that Mother raises under her fourth heading, she contends that the trial court ignored the claims that she raised in the 233rd District Court case. Assuming without deciding that Mother had served her motions on Father and had set her motions for a hearing, her claims were mooted because her claims went to access, possession, and conservatorship. *See Tex. Dep't of Fam. & Protective Servs.*, 2023 WL 4610048, at \*1; *J.D.*, 2020 WL 4607015, at \*1. Moreover, the final order states,

> IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

The trial court thus disposed of the motions that Mother had filed in the 233rd District Court case, which was consolidated into this case.

In her final argument under her fourth heading, Mother contends in one sentence that the trial court clearly displayed a bias in favor of Father. Mother failed to provide any substantive analysis and has thus waived this argument. *See 1701 Com. Acquisition, LLC v. Macquarie US Trading, LLC*, No. 02-21-00333-CV, 2022 WL 3904976, at \*14–15 (Tex. App.—Fort Worth Aug. 31, 2022, no pet.) (mem. op.); *see*

24

*also Zhao*, 2022 WL 11456754, at \*8 ("[A] litigant's dissatisfaction with a judge's rulings does not support a finding of bias.").

Accordingly, we overrule the arguments presented under Mother's fourth argument heading.[21]

## V. Conclusion

Having sustained only Mother's argument challenging the "Medical Support Judgment," we modify pages 12 and 13 of the trial court's "Final Order in Suit to Modify Parent–Child Relationship" to delete that section and affirm as modified.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: January 18, 2024

---

[21]To the extent that Mother raises other issues in this section, we overrule them as inadequately briefed. *See Zhao*, 2022 WL 11456754, at \*4; *Huey*, 200 S.W.3d at 854.