Opinion issued July 24, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00537-CV

———————————

**CHRISTIAN EDGLEY, Appellant**

**V.**

**LATEISHA RAGLAND, Appellee**

---

**On Appeal from the 505th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 15-DCV-228707**

---

## MEMORANDUM OPINION

Appellant, Christian Edgley, challenges the trial court's May 16, 2023 default

Final Order in Suit to Modify Parent-Child Relationship, entered after a bench trial,

granting the petition of appellee, LaTeisha Ragland, to modify a previous order in a

suit affecting the parent-child relationship.  In three issues, Edgley contends that the

trial court erred in granting more relief than requested by Ragland, appointing Ragland as sole managing conservator, denying Edgley possession and access, and allowing Ragland to testify at trial.

We affirm in part and reverse and remand in part.

## Background

Ragland is the mother and Edgley is the father of their minor child, E.E. On January 10, 2017, the trial court signed an Agreed Order in Suit Affecting the Parent-Child Relationship, in which it appointed Ragland and Edgley as joint managing conservators of E.E. and entered a modified possession order. On December 11, 2019, the trial court signed a Final Order in Suit Affecting the Parent-Child Relationship, which granted Ragland's petition to modify the parent-child relationship and modified the trial court's January 10, 2017 order. In the December 11, 2019 order, the trial court appointed Ragland and Edgley as joint managing conservators of E.E. and awarded Ragland the exclusive right to designate E.E.'s primary residence. The order included a possession order and instructed that Ragland had "the right to possession of [E.E.] at all times that [were] not specifically designated as periods of possession" for Edgley.

On February 3, 2020, Ragland filed a Petition to Modify the Parent-Child Relationship, requesting that the trial court modify its previous order as to conservatorship, possession, access, and child support and asserting that it was in

2

the best interest of E.E. to do so. According to Ragland, "[t]he emotional wellness, mental health, and health circumstances of . . . Edgley, a conservator of [E.E.], ha[d] materially and substantially changed" since the trial court's last order, and Edgley had exhibited "an inability to make decisions that [were] in the best interest of [E.E.]" while the child was in his custody. Ragland asked the trial court to appoint her as sole managing conservator of E.E. and award her the exclusive right to designate E.E.'s primary residence without regard to geographic location. Ragland also requested that the trial court modify its previous possession order to require that Edgley have only supervised visitation with E.E. and that the trial court increase the amount of child support paid by Edgley.

Ragland attached her affidavit to her petition to modify. In her affidavit, she testified that E.E.'s environment with Edgley may be endangering his physical health or significantly impairing his emotional development. According to Ragland, Edgley had not complied with the trial court's previous Final Order in Suit Affecting the Parent-Child Relationship because he had been keeping E.E. "overnight on Thursdays and Sundays without a prior agreement with [Ragland] and against" the court's order. Edgley had also kept the child away from Ragland for more than thirty-nine days and prevented E.E. from going to school for an entire month. In her

opinion, Edgley had "shown an inability to make decisions in [E.E.'s] best interest and ha[d] endangered him and his educational advancement."[1]

Edgley filed a Counterpetition to Modify Parent-Child Relationship, requesting that the trial court modify its previous order as to conservatorship, possession, and access, and asserting that it was in the best interest of E.E. to do so. According to Edgley, Ragland had "engaged in a history or pattern of family violence," "child abuse[,] and child neglect." Edgley asked the trial court to appoint him as sole managing conservator of E.E. or Ragland and him as joint managing conservators, and he requested to be appointed as the person with the right to designate E.E.'s primary residence. Edgley also requested that the trial court modify its previous possession order to require that Ragland be denied access to E.E. or only have supervised visitation with E.E., and that the trial court increase Ragland's child support payments.

Edgley attached his affidavit to his counterpetition to modify. In his affidavit, Edgley testified that "[f]or the past several years [E.E.] ha[d] been telling [him] that [Ragland] (and her boyfriend)" were hitting him a lot and "it hurt[] him really bad and he [was] scared." Whenever E.E. was in Edgley's possession, he would count down the days until he had to be returned to Ragland. "When it [would] get[] close to the time for [Edgley] to send him back, [E.E. would] cry[] hysterically and beg[]

---

[1]     Edgley answered, generally denying the allegations in Ragland's petition to modify.

4

[Edgley] not to send him back." E.E. reported that if he cried or asked to call his siblings, Ragland would "whip[] him." E.E. also told Edgley that he would be punished by Ragland if he made outcries to Edgley.

Edgley further testified that beginning in May 2020, Ragland kept E.E. away from him for almost ten months and would not let him visit E.E. Ragland would not respond to his telephone calls and text messages, and Edgley was not able to talk to E.E. Edgley did not see E.E. until March 5, 2021, and E.E. "started crying and begged [Edgley] not to send him back." E.E. said that Ragland was "now spanking him [on his] bare bottom . . . and . . . it[] hurt him really badly." While in Edgley's care, E.E. would say, "[H]ow many days Dad, 8? 9? Please don't make me go back." (Internal quotations omitted.) E.E. was afraid to be at Ragland's home.

At trial,[2] Ragland testified that she was E.E.'s mother. She had filed a petition to modify, requesting that she be named sole managing conservator of E.E. and that Edgley have supervised visitation with E.E.

Ragland further testified that Edgley kept E.E. away from her, against the trial court's orders, from December 2019 until May 2020 and then from March 25, 2021 until trial in 2023.[3] At the time of trial, in January 2023, Ragland had not seen E.E.

---

[2]     Edgley did not appear at trial.

[3]     Ragland noted that she kept E.E. away from Edgley from May 2020 to February 2021.

since March 25, 2021.[4]  She did not have possession of E.E. when she filed her petition to modify in February 2020.  According to Ragland, criminal charges were filed against Edgley for "interference with child custody."  Although she had tried to track down Edgley and "get [E.E.] back," Ragland had been unable to do so.  The last time she spoke to E.E. on the telephone was in February 2022.  Ragland had repeatedly tried to exercise her visitation rights, but Edgley would not show up to exchange E.E.  Ragland stated that Edgley told her he was not returning E.E. to her because he alleged that she was abusing E.E.  Ragland had not received any updates on E.E. from Edgley while he was in possession of E.E.

Additionally, Ragland testified that the trial court signed an emergency temporary order in January 2022, in which she was given possession of and access to E.E. on every Saturday after "the first, third, and fifth Friday of the month."  Edgley did not comply with the trial court's order though, and she had not seen E.E. despite the trial court's January 2022 emergency temporary order.

Ragland noted that during the pendency of the case, she filed a motion for enforcement against Edgley because he was violating the trial court's orders and not allowing her to see E.E., and the trial court signed an enforcement order in

---

[4]    On March 25, 2021, she took E.E. to Dunkin' Donuts restaurant.  She testified that he did not appear to be anxious, scared, or nervous about being around her or his maternal grandmother.

September 2021.  In doing so, the trial court found Edgley in contempt and "ordered [him] to jail but with a suspended commitment."

In April 2022, the trial court modified its January 2022 emergency temporary order, gave Ragland "exclusive possession of [E.E.]," and named her sole managing conservator of E.E.[5]  The trial court's modified emergency temporary order also provided that Edgley was not allowed possession of or access to E.E. and his visitation with E.E. were suspended indefinitely until further order from the trial court.  Following entry of the trial court's April 2022 modified emergency temporary order, Ragland had attempted to locate E.E. by going to Edgley's purported residence with law enforcement and through "writs of attachment."

Ragland stated that she was requesting that the trial court, in its final order, appoint her sole managing conservator of E.E. and deny Edgley's access to E.E. entirely.  In the alternative, Ragland requested that Edgley only have supervised visitation with E.E. because Edgley had "made it abundantly clear that he ha[d] no desire to return [E.E. to her] or follow any order of th[e] [trial] [c]ourt."  To Ragland's knowledge, Edgley had not complied with any of the trial court's orders in the last two years while the case had been pending.

---

[5]      Edgley did not appear for the hearing regarding modifying the trial court's January 2022 emergency temporary order.

Ragland further testified that she was also concerned about E.E.'s emotional well-being because "being alienated from a parent c[ould] definitely be hard on a child." Ragland worried about the things Edgley could be telling E.E. about her and about E.E.'s education and health. Edgley kept E.E. from going to public school, and Ragland did not know if E.E. was being homeschooled.

As to the period of time when E.E. was living with her, Ragland explained that he attended public school until the COVID-19 pandemic[6] and then he was homeschooled due to the pandemic. Ragland denied hitting E.E. with her hands, fists, or a belt when he was in her care. She stated that she had never used corporal punishment with E.E., but she had "pop[ped] [him] on the arm" occasionally. She did not intend to "pop" E.E. on the arm ever again.

If E.E. was returned to her care, Ragland would enroll him in the public elementary school by her house, which is the school he had previously attended. She intended for him to have a loving home environment, and she believed that it was in E.E.'s best interest to be in her custody and care. She had familial support, and her mother—E.E.'s maternal grandmother—lived with her and could help with E.E.

As to discipline if E.E. were placed in her care, Ragland stated that she would be "communicative with [E.E.] and just make sure that he underst[ood] what his

---

[6]    *See generally Kim v. Ramos*, 632 S.W.3d 258, 261 n.5, 266 n.13 (Tex. App.— Houston [1st Dist.] 2021, no pet.) (discussing COVID-19 pandemic).

boundaries [were] and explain to him why those boundaries [had been] set." She would not use corporal punishment with E.E. and would discipline him by "tell[ing] him what he[] [was] doing wrong and tell[ing] him why there's a better path." Ragland would allow E.E. to participate in extracurricular activities, whether it was sports or music, or "anything he want[ed] to do." She also had a new therapist set up for E.E., and she intended to be patient with E.E. as he transitioned to her care. If E.E. needed "more in-depth therapy" or "reunification therapy," Ragland would ensure that E.E. received it.

In regard to her concerns about Edgley, Ragland noted that Edgley's father and grandmother were concerned about Edgley's mental health, and Edgley's father had testified at a previous hearing that Edgley "should be in a facility for at least six months" because he "d[id] not have any concept of what's real and . . . he w[ould] go extensively to make up stories to fit the narrative that suit[ed] him." Ragland was also concerned that while in Edgley's custody, E.E. was being moved around a lot and lacked stability. During the pendency of the case, Ragland had filed a petition for writ of habeas corpus because Edgley had been keeping E.E. away from her in violation of the trial court's order. A warrant or capias had been issued for Edgley's arrest because Edgley had failed to produce E.E.

Ragland acknowledged during her testimony that at one point during the pendency of the case, the trial court had ordered that she have supervised visitation

with E.E. However, when she attempted to do so with E.E., the child had been "coerced to throw a panic attack." Ragland also stated that E.E. had made a "coerced statement" to his therapist about abuse, but she noted that during the pendency of the case, the trial court had requested that the Department of Family and Protective Services ("DFPS") complete a psychological assessment of E.E. According to Ragland, DFPS had not made a "reason-to-believe finding" against her as to physical abuse of E.E. Instead, DFPS made an "unable to determine" finding as to the physical abuse allegations against her. (Internal quotations omitted.) Any allegations of abuse against Ragland were not true, and she believed that E.E. had been coerced into making outcries.

Kimberly Mobley, E.E.'s maternal grandmother, testified that E.E. had previously lived with her and Ragland. During the pendency of the case, the trial court had determined that E.E. felt safe with Mobley and comfortable with her, and when Ragland was required to have supervised visitation with E.E., Mobley supervised those visits.

As to Ragland, Mobley stated that while E.E. had been in Ragland's care, their relationship was "awesome." It was a healthy and loving mother-and-son relationship. Ragland was kind and calm and did not yell a lot. Mobley had never seen Ragland engage in corporal punishment. If Ragland testified that she had "popped [E.E.] on the arm," then it would have only been a couple of times. E.E.

10

was a very bright child, and "if you told him something one time[] [and] he got in trouble for [it], he would not do it again."

Mobley did note that she had seen E.E. be afraid of Ragland, but that only happened when he returned from Edgley's house. According to Mobley, E.E. had been told by Edgley not to listen to Ragland, and when she said anything to just scream. E.E. would follow Edgley's instructions. Mobley stated that she had personally heard Edgley instruct E.E. on how to act around Ragland.

After every visit with Edgley, Mobley and Ragland would have to "reprogram" E.E. by letting him know that they loved him, and they were listening to him. When E.E. did not see Edgley for long periods of time, he never acted fearful of Ragland.

On May 16, 2023, the trial court signed a default Final Order in Suit to Modify Parent-Child Relationship, finding the allegations in Ragland's petition to modify to have merit and that modification of its previous order was in the best interest of E.E. In its order, the trial court appointed Ragland as sole managing conservator of E.E. and awarded her the right to designate E.E.'s primary residence. The trial court did not appoint Edgley as possessory conservator of E.E. Instead, it found that appointing Edgley as possessory conservator was not in E.E.'s best interest and possession of and access to E.E. by Edgley would endanger the physical and emotional welfare of E.E. Thus, the trial court ordered that Edgley have no

11

possession of or access to E.E. Finally, the trial court ordered Edgley to pay $230 a month in child support.

The trial court then issued the following findings of fact and conclusions of law:

### I. Procedural History

1. On February 2, 2020, Petitioner[] . . . Ragland filed her Original Petition to Modify the Parent-Child Relationship. Respondent was . . . Edgley.

2. On March 3, 2021, [Edgley] filed his Counterpetition to Modify Parent-Child Relationship/Request for Emergency Temporary Orders and to Appoint Amicus Attorney.

3. On April 8, 2021[] and May 12, 2021, the [trial] court heard the parties' request for temporary orders.

4. On May 12, 2021, Ragland filed her Amended Motion for Enforcement and Possession and Access.

. . . .

6. On June 3, 2021, the [trial] court issued Temporary Orders and appointed an Amicus Attorney.

7. On August 24, 2021, Edgley was found in contempt of court and sentenced to 30 days in the Fort Bend County Jail. The commitment was suspended and Edgley was placed on [c]ommunity [s]upervision pursuant to terms and conditions.

8. On March 9, 2022, . . . Ragland filed a Motion to Modify Emergency Temporary Orders and a Motion to Revoke Suspension of Commitment.

9. On April 21, 2022, Ragland's Motion to Modify Emergency Temporary Orders was heard. Edgley did not appear at the hearing.

12

10.    On April 26, 2022, the [trial] court signed Default Temporary Orders.

11.    On January 23, 2023, the parties appeared for final trial. Trial began and was recessed until February 9, 2023. On February 9, 2023, a Joint Motion for Continuance was granted[,] and trial was reset to April 4, 2023. [Edgley] was sworn to reappear on Ragland's Motion to Revoke Suspension of Commitment.

12.    On April 4, 2023, the parties agreed to reset all pending matters, including final trial to April 18, 2023. [Edgley] was again sworn to reappear on Ragland's Motion to Revoke Suspension of Commitment.

. . . .

14.    On April 18, 2023, [Edgley] failed to appear[,] and a Capias was issued. Trial was reset to May 8, 2023.

15.    On May 8, 2023, the bench trial concluded[,] and the [trial] court issued its ruling for final orders. Edgley did not appear.

. . . .

## II.    Findings of Fact

. . . .

18.    . . . Ragland appeared with counsel. . . . Edgley failed to appear and defaulted. . . .

19.    . . . Edgley has withheld the child from Ragland in violation of the [trial] court's orders for over two years.

20.    . . . Edgley denied the Amicus Attorney access to the child.

21.    . . . Edgley failed to appear at the hearing on Ragland's Motion to Modify Temporary Orders and failed to appear at final trial.

13

22. On April 18, 2023, Edgley's father appeared on his behalf and stated that he was trying to "talk Edgley into" relinquishing the child to Ragland.

23. At the time of trial, law enforcement had become involved in the case[,] and Edgley had an active warrant for his arrest.

24. Edgley has demonstrated a blatant disregard for the orders of the [trial] court.

25. Edgley's acts and omissions indicate that the existing parent-child relationship is not a proper one.

26. Edgley has demonstrated an inability and out right refusal to coparent.

27. Edgley has demonstrated an inability to act in the best interest of the child.

28. . . . Ragland has demonstrated an ability and willingness to act in the best interest of the child and foster co-parenting relationship with the other conservator.

29. . . . Ragland understands and is able to meet the needs of the child.

30. . . . Ragland has the support of family to assist her in meeting the needs of the child.

### III. Conclusions of Law

. . . .

35. . . . [T]he circumstances of the child, a conservator, or other party affected by the [previous] order have materially and substantially changed since the date of the rendition of the order.

36. . . . [T]he modifications requested by . . . Ragland are in the best interest of the child.

14

37.     It is in the best interest of the child that . . . Ragland be appointed [s]ole [m]anaging [c]onservator of the child the subject of th[e] suit.

38.     . . . [A]ppointing . . . Edgley as a possessory conservator is not in the best interest of the child and . . . possession or access would endanger the physical or emotional welfare of the child.

(Internal quotations omitted.)

## Standard of Review

Trial courts have wide discretion in determining issues of custody, control, possession, support, and visitation matters involving children. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Turner v. Turner*, 47 S.W.3d 761, 763 (Tex. App.—Houston [1st Dist.] 2001, no pet.). We review a trial court's decision to modify conservatorship for an abuse of discretion. *Gillespie*, 644 S.W.2d at 451; *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). We also review a trial court's determinations on child custody, control, possession, and visitation for an abuse of discretion. *Gillespie*, 644 S.W.2d at 451. A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In making this determination, we view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *In re K.M.B.*, 606 S.W.3d 889, 894 (Tex. App.—Dallas 2020, no pet.); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993,

15

writ denied).  An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.  *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

## Possession and Access

In his first issue, Edgley argues that the trial court erred in its May 16, 2023 default Final Order in requiring that Edgley have no possession of or access to E.E. because Ragland did not request such relief in her Petition to Modify the Parent-Child Relationship.

"The Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply to a suit for modification" of the parent-child relationship.  *In re A.B.H.*, 266 S.W.3d 596, 599 (Tex. App.—Fort Worth 2008, no pet.); *see* TEX. FAM. CODE ANN. § 156.004.  "Rule 301 of the Texas Rules of Civil Procedure provides that the judgment of the court must be supported by the pleadings."  *In re A.B.H.*, 266 S.W.3d at 599; *see* TEX. R. CIV. P. 301.  This includes default judgments.  *See In re Marriage of Day*, 497 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

A plaintiff's pleadings must also be sufficient to provide the opposing party fair notice of the plaintiff's cause of action and the relief sought.  *Flowers v. Flowers*, 407 S.W.3d 452, 457–58 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see*

16

*McKnight v. Trogdon–McKnight*, 132 S.W.3d 126, 131 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "Fair notice" exists when the opposing party can ascertain from the pleading the nature of the claims, the basic issues in controversy, and what testimony will be relevant to the claims. *Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex. App.—Dallas 2011, no pet.)

In a suit for modification of the parent-child relationship, we have specifically explained:

> A default judgment must be supported by the pleadings. The defendant must have fair notice of the plaintiff's cause of action and the relief sought. A judgment not supported [by the pleadings] is erroneous. A party may not be granted relief in the absence of pleadings to support that relief, absent trial by consent.

*Binder v. Joe*, 193 S.W.3d 29, 32 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (internal citations omitted).

In *Binder*, the children's father was originally named possessory conservator of the children and ordered to make child support payments. *Id.* at 31. He subsequently filed a petition to modify, requesting appointment as "conservator of the right[] to determine the primary residence of the remaining minor child and to receive child support for that child's benefit." *Id.* The trial court signed a default modification order that removed the children's mother as a managing conservator, appointed father as sole managing conservator, ordered mother to begin making child support payments, and reduced father's alleged child support arrearages to

zero. *Id.* at 31–32. On appeal, this Court held that the trial court erred in appointing father as sole managing conservator of the remaining minor child and by reducing father's child support arrearages to zero because father's pleadings did not support those grounds for relief, i.e., father had not requested such relief in his pleadings. *Id.* at 32–33; *see also In re J.A.L.*, No. 02-10-00374-CV, 2012 WL 858638, at *2–3 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) (holding trial court erred by removing father as sole managing conservator, appointing mother and father as joint managing conservators, and appointing mother as "primary" joint managing conservator where mother did not request such relief in her pleadings (internal quotations omitted)); *In re A.B.H.*, 266 S.W.3d 600–01 (holding trial court erred in appointing father sole managing conservator and issue was not tried by consent because "record [was] devoid of evidence indicating that both parties understood that th[e] issue was before the trial court" and father's pleadings requested only that he be appointed joint managing conservator with right to designate children's primary residence).

Here, in her Petition to Modify the Parent-Child Relationship, Ragland requested that the trial court appoint her as sole managing conservator of E.E. with the exclusive right to designate his primary residence. She also asked the trial court to modify its previous possession order and require that Edgley have supervised

18

visitation with E.E., and she requested that the trial court increase the amount of Edgley's child support payments.

In its May 16, 2023 default Final Order in Suit to Modify Parent-Child Relationship, the trial court did appoint Ragland as sole managing conservator of E.E. with the exclusive right to designate his primary residence, but it also found that appointing Edgley as possessory conservator of E.E. was not in the child's best interest and possession of and access to E.E. by Edgley would endanger his physical and emotional welfare. Thus, the trial court ordered that Edgley have no possession of or access to E.E. Although a party's pleadings are to be liberally construed in the absence of special exceptions, Ragland did not request, as relief in her petition, for Edgley to have no possession of or access to E.E. In fact, in her petition to modify, she requested that certain rights be granted to both she and Edgley "during their respective periods of possession of" E.E.[7] *See Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 107 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (relying on plain language of petition to determine basis of plaintiff's claim).

---

[7] We note that in her Petition to Modify the Parent-Child Relationship, in the "Temporary Relief" section, Ragland requested a temporary restraining order and injunction "excluding . . . Edgley from possession of or access to" E.E. However, this was not sufficient to put Edgley on notice that Ragland was requesting exclusion of Edgley from possession of and access to E.E. after the Final Order was signed. *See, e.g.*, *In re Marriage of Day*, 497 S.W.3d 87, 90–92 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (where wife's petition only requested temporary maintenance while divorce action was pending, pleading did not put husband on notice that wife was seeking spousal support that extended after final decree signed).

Accordingly, we hold that the trial court erred in ordering that Edgley have no possession of or access to E.E. because such relief was not requested by Ragland in her pleadings. *See Binder*, 193 S.W.3d at 32–33; *see also In re J.A.L.*, 2012 WL 858638, at *2–3.

We sustain Edgley's first issue.

### Sole Managing Conservatorship

In his second issue, Edgley argues that the trial court erred in appointing Ragland as sole managing conservator of E.E. because the evidence was legally and factually insufficient to support the trial court's ruling.[8]

In family-law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard of review; therefore, legal and factual sufficiency are not independent grounds of error but are relevant factors in an appellate court's assessment of whether the trial court abused its discretion. *In re J.Y.O.*, No. 22-0787, --- S.W.3d ---, 2024 WL 5250363, at *9 n.92 (Tex. Dec. 31, 2024); *In re K.M.B.*, 606 S.W.3d at 894; *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Review in this context is two-pronged: a reviewing court determines whether the trial court (1) had sufficient information on

---

[8] Edgley also asserts in his second issue that the evidence was insufficient to support the trial court's ruling that he have no possession of or access to E.E. Because we have already held that the trial court erred in ordering that Edgley have no possession of or access to E.E., we need not address this portion of Edgley's second issue. *See* TEX. R. APP. P. 47.1.

which to exercise its discretion and (2) erred in applying its discretion because it made an unreasonable decision. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Michels*, 212 S.W.3d at 588. Traditional sufficiency review comes into play under the first prong. *Stamper*, 254 S.W.3d at 542; *Zeifman*, 212 S.W.3d at 588. We then determine whether, based on the evidence, the trial court made a reasonable decision. *West v. West*, No. 01-14-00350-CV, 2016 WL 1719328, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2016, no pet.) (mem. op.). A trial court does not abuse its discretion if some evidence of substantive and probative character supports its decision. *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Holley*, 864 S.W.2d at 706.

In this case, the trial court issued findings of fact and conclusions of law. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions, and we review the legal and factual sufficiency of the evidence supporting those findings using the same standards that we apply to jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for the sufficiency of the evidence. *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth

21

2016, no pet.). However, we defer to unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014); *see also Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 480 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("[U]nchallenged findings of fact bind an appellate court unless the contrary is proved as a matter of law or there is no evidence to support the finding.").

In evaluating a legal-sufficiency challenge, we credit evidence that supports the trial court's finding if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *In re Marriage of C.A.S.*, 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. We should conclude the evidence is legally insufficient only if the record discloses: (1) a complete absence of evidence of a vital fact; (2) the only evidence offered to prove a vital fact cannot be considered because of rules of law or evidence; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the opposite of the vital fact is conclusively established. *Id.* at 810.

In a factual-sufficiency review, we examine all the evidence in the record, both supporting and contrary to the trial court's finding, and reverse only if the

22

finding is so against the great weight of the evidence as to be clearly wrong and unjust. *In re Marriage of C.A.S.*, 405 S.W.3d at 382–83. When the evidence conflicts, we must presume the fact finder resolved the inconsistencies in favor of the order if a reasonable person could do so. *City of Keller*, 168 S.W.3d at 821; *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.).

In a bench trial, the trial court, as the trier of fact, is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 530 (Tex. App.—Houston [1st Dist.] 1994, no writ). The trial court may choose to believe some witnesses over others. *Martinez v. Lopez*, No. 01-09-00951-CV, 2011 WL 2112806, at *3 (Tex. App.—Houston [1st Dist.] May 26, 2011, no pet.) (mem. op.). We are mindful that "the trial [court] is best able to observe and assess the witnesses' demeanor and credibility, and to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (internal quotations omitted).

The party seeking to modify a previous conservatorship order must show: (1) the circumstances of the child, a conservator, or another party affected by the order have materially and substantially changed since the order's rendition and (2) modification would be in the child's best interest. Tex. Fam. Code Ann. § 156.101(a)(1)(A); *Douglas v. Douglas*, No. 01-22-00568-CV, 2024 WL 117168,

23

at *2 (Tex. App.—Houston [1st Dist.] Jan. 11, 2024, no pet.) (mem. op.).  The first element is not at issue here.  By alleging in his Counterpetition to Modify Parent-Child Relationship that "[t]he circumstances of [E.E.], a conservator, or other party affected by the order to be modified ha[d] materially and substantially changed since the date of rendition of the order to be modified," Edgley judicially admitted the first element and he may not (and does not) challenge the sufficiency of the evidence supporting a material and substantial change in circumstance.  *See Douglas*, 2024 WL 117168, at *2; *In re A.N.G.*, 631 S.W.3d 471, 479–80 (Tex. App.—El Paso 2021, no pet.) ("In a modification proceeding, if both parties' claims contain the common essential element of changed circumstances . . . , one party's allegation that the essential element is met constitutes a judicial admission.").

Instead, our sufficiency analysis on appeal focuses on the second element— whether modification of the previous conservatorship order was in E.E.'s best interest.  *See Douglas*, 2024 WL 117168, at *2.  The best interest of the child is always the primary consideration in determining issues of conservatorship.  TEX. FAM. CODE ANN. § 153.002; *Moreno v. Perez*, 363 S.W.3d 725, 737 (Tex. App.— Houston [1st Dist.] 2011, no pet.).  The trial court has wide latitude in determining a child's best interest.  *See In re A.T.*, No. 02-22-00407-CV, 2023 WL 4007364, at *4 (Tex. App.—Fort Worth June 15, 2023, no pet.) (mem. op.).  Courts employ the non-exhaustive list of *Holley* factors to determine the best interests of the child.  *See*

24

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  *Id.*; *Moreno*, 363 S.W.3d at 737–38.  In the context of a custody modification, courts may also consider the child's need for stability and the need to prevent constant litigation in child-custody cases.  *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

Edgley asserts on appeal that it was not in E.E.'s best interest to designate Ragland as sole managing conservator of the child.  The appellate record does not contain any information regarding several of the *Holley* factors.  For instance, there is no information regarding E.E.'s desires, the emotional and physical needs of E.E. now and in the future, or the programs available to assist Ragland or Edgley in promoting the best interest of E.E.

However, Ragland testified at trial that Edgley had secreted E.E. away from her from December 2019 until May 2020 and then again from March 25, 2021

25

through trial in 2023.  Ragland had not seen E.E. since March 25, 2021 and had not spoken to E.E. on the telephone since February 2022.  When Ragland tried to exercise her possession and access rights, Edgley did not show up to exchange E.E. Ragland had tried to track down Edgley and "get [E.E.] back," but she had been unable to do so.  *See, e.g.*, *In re J.W.H.*, No. 14-09-00143-CV, 2010 WL 1541679, at *6–7 (Tex. App.—Houston [14th Dist.] April 20, 2010, no pet.) (mem. op.) (affirming trial court's modification order changing which parent had primary custody based in part on evidence parent repeatedly attempted to interfere with other parent's periods of possession).

Ragland further testified that after the trial court signed an emergency temporary order in January 2022, in which she was given possession of and access to E.E. on certain days, Edgley did not comply with the trial court's order, and she had not been able to see E.E. despite the trial court's order.  In April 2022, the trial court modified its January 2022 emergency temporary order, gave Ragland "exclusive possession of [E.E.]," and named her sole managing conservator of E.E. The trial court also ordered that Edgley was not allowed possession of or access to E.E. and his visitation with E.E. were suspended indefinitely until further order from the trial court.  Following the trial court's April 2022 modified emergency temporary order, Ragland attempted to locate E.E. by going to Edgley's purported residence with law enforcement and through "writs of attachment," but she was unable to do

so. Ragland noted that Edgley, during the pendency of the case, had been held in contempt for violating the trial court's orders, and she had to file a petition for writ of habeas corpus because Edgley had been keeping E.E. away from her in violation of the trial court's order. A warrant or capias had been issued for Edgley's arrest because Edgley had failed to produce E.E. *See, e.g.*, *Whitworth*, 222 S.W.3d at 631–32 (considering whether parent secreted child away from other parent in violation of temporary orders in making conservatorship determination).

Ragland also testified that she was concerned that while in Edgley's custody, E.E. was being moved around a lot and lacked stability, and she worried about E.E.'s well-being because "being alienated from a parent c[ould] definitely be hard on a child." She was concerned about the things that Edgley could be telling E.E. about her. *See, e.g.*, *Allen v. Allen*, 475 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[P]ersistent alienation of the other parent can be a guiding consideration in making possession and access determinations."); *In re Marriage of Chandler*, 914 S.W.2d 252, 254–56 (Tex. App.—Amarillo 1996, no writ) (affirming order divesting parent of managing conservatorship due in part to interference with other parent's relationship with child).

Notably, Edgley has not challenged the following findings of fact made by the trial court in this case:

> 19.　. . . Edgley has withheld the child from Ragland in violation of the [trial] court's orders for over two years.

27

20. . . . Edgley denied the Amicus Attorney access to the child.

21. . . . Edgley failed to appear at the hearing on Ragland's Motion to Modify Temporary Orders and failed to appear at final trial.

. . . .

23. At the time of trial, law enforcement had become involved in the case[,] and Edgley had an active warrant for his arrest.

24. Edgley has demonstrated a blatant disregard for the orders of the [trial] court.

25. Edgley's acts and omissions indicate that the existing parent-child relationship is not a proper one.

26. Edgley has demonstrated an inability and out right refusal to coparent.

These unchallenged factual findings are binding on this Court, unless the contrary is established as a matter of law or there is no evidence to support them. *See Tenaska Energy*, 437 S.W.3d at 523; *Enshikar*, 527 S.W.3d at 480. Ragland's testimony supports these findings. *See In re J.W.H.*, 2010 WL 1541679, at *7 (trial court's unchallenged findings that parent's behavior hampered children's opportunities to favorably associate with other parent supported trial court's determination that modification was in best interest of children).

Viewing the evidence in the appropriate light,[9] we conclude that the evidence is legally and factually sufficient to support the trial court's determination that modifying its previous conservatorship order to appoint Ragland as sole managing conservator was in the best interest of E.E. Thus, we conclude that the trial court did not err in appointing Ragland as sole managing conservator.

We overrule Edgley's second issue.

### Admission of Evidence

In his third issue, Edgley argues that the trial court erred in allowing Ragland to testify because "she failed to respond to any discovery requests."

We review a trial court's decision to admit evidence for an abuse of discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). However, even if a trial court abused its discretion by improperly admitting evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Bay Area Healthcare*, 239 S.W.3d at 234. To show harmful error, the complaining party on appeal must show that in

---

[9] To the extent that Edgley references "abuse allegations" against Ragland as evidence that appointing Ragland as sole managing conservator of E.E. was not in the child's best interest, Ragland testified that E.E. was coerced by Edgley into making such allegations. The trial court, as the trier of fact, is the sole judge of a witness's credibility and the weight to be given her testimony. *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 530 (Tex. App.—Houston [1st Dist.] 1994, no writ). The trial court may choose whether to believe a witness. *See Martinez v. Lopez*, No. 01-09-00951-CV, 2011 WL 2112806, at *3 (Tex. App.—Houston [1st Dist.] May 26, 2011, no pet.) (mem. op.).

light of the entire record, the judgment turns on the particular evidence improperly admitted. *Bay Area Healthcare*, 239 S.W.3d at 234.

Edgley is not clear in his briefing as to what he means by his complaint that the trial court erred in allowing Ragland to testify "as to the facts and theories of the case," and he does not direct the Court to the portions of record where such testimony was purportedly elicited and admitted. *See* TEX. R. APP. P. 38.1(i); *Marshall v. MarOpCo., Inc.*, No. 01-22-00573-CV, --- S.W.3d ---, 2025 WL 626186, at *37 (Tex. App.—Houston [1st Dist.] Feb. 27, 2025, pet. filed) ("It is not the appellate court's duty to scour through a . . . record."). Instead, in discussing his third issue, Edgley mentions that Ragland was asked "why she fe[lt] 'there [was] a need for supervised visitation,'" and Ragland was allowed to answer that question over Edgley's Texas Rule of Civil Procedure 193.6 objection. According to Edgley, Ragland "should not have been permitted to answer [the question]: 'And can you [just] briefly explain why you feel there is a need for supervised visitation?' nor should she have been able to explain in her own words what she requested in her petition." Because Edgley does not direct this Court to any other specific portions of Ragland's testimony, we will presume that the above-referenced testimony are the portions of Ragland's testimony that he complains the trial court erred in admitting into evidence.

In the trial court, Edgley stated that Ragland had not responded to his written interrogatories or request for production and relied on Texas Rule of Civil Procedure 193.6 to assert that Ragland was, therefore, barred from testifying. *See* TEX. R. CIV. P. 193.6, 196.1, 197.1. Texas Rule of Civil Procedure 193.6 provides that a party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce into evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) that was not timely identified, unless the trial court finds good cause for the failure to timely make, amend, or supplement the discovery response or that the failure would not unfairly surprise or prejudice the other parties. TEX. R. CIV. P. 193.6(a).

Notably, under Texas Rule of Civil Procedure 193.6, a trial court may not exclude the testimony of a named party at trial, even if the party fails to disclose or identify herself as a witness in her discovery responses. *See id.* (excepting named parties from requirement that witnesses be identified in discovery as prerequisite to testifying at trial); *Bento v. Green*, No. 14-23-00587-CV, 2025 WL 1765510, at *4 (Tex. App.—Houston [14th Dist.] June 26, 2025, pet. denied) (mem. op.); *see also Marteny v. Coon*, No. 09-23-00078-CV, 2024 WL 4850051, at *10 (Tex. App.—Beaumont Nov. 21, 2024, pet. denied) (mem. op.) ("Rule 193.6(a) expressly excludes [a named party] from its application."); *Griffin v. Am. Zurich Ins. Co.*, No. 05-19-00630-CV, 2021 WL 1558736, at *5 (Tex. App.—Dallas Apr. 21, 2021, pet.

31

denied) (mem. op.) (named party entitled to testify "on his own behalf even if he had not identified himself as a fact witness in response to written discovery"); *In re M.J.M.*, 406 S.W.3d 292, 298–99 (Tex. App.—San Antonio 2013, no pet.) ("[R]ule 193.6 expressly states that it does not apply to the testimony of named parties."). Ragland is a named party in this case, and as such, is not barred from testifying under Texas Rule of Civil Procedure 193.6.

Further, assuming Edgley is correct and rule 193.6 could be used to exclude Ragland's testimony at trial, Edgley, as the party seeking to exclude evidence under rule 193.6, had a threshold burden of showing the trial court that he had requested the discovery he complained was not answered and that Ragland had failed to adequately respond to that discovery. Only then would the burden have shifted to Ragland to show good cause or lack of surprise or prejudice pursuant to rule 193.6(b). *Day v. Day*, No. 04-23-00476-CV, 2024 WL 3056665, at *3 (Tex. App.—San Antonio June 20, 2024, pet. denied) (mem. op.); *see also SJF Forest Lane, LLC v. Phan*, No. 05-22-00905-CV, 2024 WL 2796279, at *8 (Tex. App.—Dallas May 31, 2024, no pet.) (mem. op.). Here, in overruling Edgley's objection to Ragland's testimony, the trial court explained that it had no idea "what discovery was sent [to Ragland] or what wasn't responded to" and it did not know "what [had been] propounded."

At trial, none of Edgley's discovery requests were admitted into evidence. There is also no evidence in the record to show that Edgley served any discovery requests on Ragland or that Ragland did not adequately respond to Edgley's requests. *See Day*, 2024 WL 3056665, at *3–4. Because Edgley did not meet his threshold burden of showing that he requested the discovery he complained was not answered or that Ragland did not adequately respond to his requests,[10] we cannot conclude that the trial court abused its discretion in overruling Edgley's objection and allowing Ragland to testify. *See id.*; *see also Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (appellant has burden to present sufficient record on appeal to show error requiring reversal).

Finally, even if the trial court erred in allowing Ragland to testify, as previously noted, we may not reverse the trial court's judgment unless the ruling probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *Jackson v. Takara*, 675 S.W.3d 1, 6–7 (Tex. 2023). In determining if error was harmless, we "evaluate the whole case from voir dire to closing argument, considering the state of the evidence, the strength and weakness of the case, and the verdict." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex.

---

[10] Additionally, because Edgley did not meet his threshold burden, the burden never shifted to Ragland to show that she had good cause for failing to timely make, amend, or supplement her discovery responses or that her failure to do so did not unfairly surprise or prejudice Edgley. *See* TEX. R. CIV. P. 193.6(a).

2008) (internal quotations omitted). The erroneous admission of cumulative evidence does not require reversal of the trial court's judgment. *Id.*

Here, Edgley first complains that Ragland was allowed to answer the question: "And can you just briefly explain why you feel there is a need for supervised visitation?" In response, Ragland stated that Edgley "ha[d] made it abundantly clear that he ha[d] no desire to return [E.E.] back to [her] or follow any order of th[e] Court." But this was not the only time at trial that Ragland testified as to Edgley's failure to comply with the trial court's orders during the pendency of the case or to his withholding of E.E from her, and Ragland did so at other times during trial without objection. Ragland also answered other questions about why she thought supervised visitation was warranted, which were not objected to by Edgley either. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) ("Clearly, erroneous admission [of evidence] is harmless if it is merely cumulative."); *Hawkins v. Horton*, No. 04-22-00307-CV, 2023 WL 5603194, at *8 (Tex. App.—San Antonio Aug. 30, 2023, no pet.) (mem. op.) (holding, even if trial court erroneously allowed witness to testify, error was harmless because testimony was cumulative); *see also Bay Area Healthcare*, 239 S.W.3d at 235–36 (party must object each time inadmissible evidence is offered or obtain running objection).

Further, although Edgley additionally complains that Ragland should not "have been able to explain in her own words what she requested in her petition," we

34

note that Ragland only testified that she was requesting to be named sole managing conservator of E.E. and that Edgley have supervised visitation with the child. Based on the entire record, we cannot say that the trial court's judgment turns on this single answer from Ragland, which contains information already available to the trial court in her Petition to Modify the Parent-Child Relationship. *Bay Area Healthcare*, 239 S.W.3d at 234. As such, we cannot conclude that the complained-of testimony by Ragland is harmful.

Based on the foregoing, we hold that the trial court did not err in admitting Ragland's testimony at trial, and even if it did, the admission of the complained-of portions of her testimony was harmless.

We overrule Edgley's third issue.

## Conclusion

We reverse the portion of the trial court's order requiring that Edgley have no possession of or access to E.E. We affirm the remaining portions of the trial court's order. We remand the case to the trial court for further proceedings consistent with this opinion.

Kristin Guiney
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.